[No. 1493.]

W. H. SWEENEY, RESPONDENT, *v.* P. H. HJUL, . APPELLANT.

STATEMENT—OBJECTIONS TO, WHEN WAIVED—ORAL ARGUMENT.—When counsel appear and orally argue a case upon its merits, and afterwards, by leave of court, file a brief and therein rely upon objections to the statement: *Held*, that the oral argument upon the merits amounted to a waiver of the objections to the statement.

REOPENING OF CASE—DISCRETION OF COURT.—After a case has been closed and submitted, it is in the discretion of the court to reopen the same and permit additional evidence to be taken or not, and, if such discretion is not abused, there is no error.

IDEM—EVIDENCE REVIEWED AND HELD INSUFFICIENT.—After the case had been closed and submitted appellant moved the court for leave to examine and count the ballots in two certain precincts and to compare them with the poll books used in said precincts. No showing was made that any fraud had been committed upon the part of any one in said precincts. It further appeared that, during the trial of this action, the registry lists of these precincts had not been offered or received in evidence. The ballots from these precincts had all been presented to the court and carefully examined by the court and counsel. From the reading of counsel's motion, the only purpose thereof was to ascertain whether evidence might exist favorable to appellant: *Held*, that a stronger showing must be made before it can be held error in the trial court in refusing to reopen a case after the same has been submitted and the court has announced its decision.

ILLEGAL BALLOTS—DISTINGUISHING MARKS.—The ballots of all the voting precincts of Eureka county contained the names of the township officers to be elected in Palisade and Eureka townships: *Held*, that a ballot, containing a cross placed opposite the name of a candidate for one of said township offices, cast in a precinct where the said candidate was not to be voted for, was illegal and should be rejected, the said cross constituting a distinguishing mark.

BALLOTS—MARKS MADE BY ACCIDENT, EFFECT OF.—A ballot containing a mark which was clearly made accidentally, and not deliberately, will not be rejected as containing a distinguishing mark.

IDEM—DISTINGUISHING MARKS—EXAMPLES OF.—The following marks upon ballots, held to be distinguishing marks, rendering the ballot illegal: A cross deliberately made by the voter upon the ballot in the blank space for presidential electors under the words "Vote for three," and not opposite the name of any candidate; crosses after the names of

| 23 | 409 |
| 24 | 441 |
| f25 | 168 |
| 25 | 171 |
| 25 | 172 |
| 25 | 192 |

two of the candidates for presidential electors, placed within a square made deliberately by the voter; crosses made with a purple, instead of a black, lead pencil; a ballot containing a cross made with a lead pencil near the center and top thereof and immediately under the cross printed thereon, another cross with lead pencil in the blank space beneath the name of a candidate, another cross with lead pencil near the middle of the said ticket and immediately following the words "For members of the assembly"; a ballot disfigured by a partially erased cross after the name of a candidate; a cross opposite the name of a candidate which the voter has deliberately and intentionally attempted to scratch out and obliterate with a pencil, thereby disfiguring the ballot; a cross made with a pencil in the vacant space below and to the right of the name of a candidate for office; an erasure of a cross opposite the name of a candidate for office and a perpendicular mark with horizontal marks crossing the same at top and bottom opposite the name of another candidate; three straight lines crossing each other so as to distinctly make a star opposite the name of a candidate, the color, direction, course and uniformity of which said lines composing the star, making it clearly apparent that the person voting the ballot deliberately and intentionally made them; a horizontal line made opposite the name of a candidate for office and two crosses made in the square opposite the name of another candidate; a cross made with a lead pencil in the vacant space near the center of the first column and the left-hand side of the ticket between the words "For presidential electors" and the words "Vote for three"; a cross in the vacant space beneath the name of a candidate; crosses made beneath or above the names of candidates for president and vice-president; marks of impossible description after the name of a candidate; marks opposite the name of a candidate that more nearly resemble a spider than anything else; crosses made with a pencil indiscriminately placed in various parts of the ballot; a perpendicular mark made with a lead pencil opposite the name of a candidate; two crosses opposite the name of a candidate; a cross not opposite the name of any candidate.

IDEM—STRIP WITH NUMBER NOT TORN OFF, MARKED CANCELED.—A ballot rejected in the count by the lower court has the strip on the right-hand side thereof bearing the number attached, and written in ink on the back of the same is the word "canceled": *Held*, that without further explanation, which the record does not give, as to when and by whom the word was written thereon, the appellate court cannot say the lower court erred in refusing to count such ballot.

IDEM—DISTINGUISHING MARKS—BALLOTS WITH STUB AND NUMBER ATTACHED —RESPONSIBILITY OF VOTER.—In a certain precinct there were cast twenty-two ballots, to each of which there was attached the stub bearing the printed number. The record discloses no facts, other than these, in relation to the said ballots: *Held*, that where a voter blindly accepts a ballot from an election officer bearing marks that will destroy the secrecy of the ballot, he should be held to know that fact. It will not do to cast all responsibility upon the election officers except in those matters where the officer has the exclusive right to act, and where his acting or non-acting would destroy the validity of the ballot.

APPEAL from the District Court of the State of Nevada, Eureka county; *A. L. Fitzgerald*, District Judge:

Action by W. H. Sweeney against P. H. Hjul to contest the latter's election to the office of Sheriff of Eureka county. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Thos. Wren*, for Appellant:

I.   The consideration of this case, so far as the legality or illegality of the ballots is concerned, has been made very simple and plain, and easy to determine if this court adheres to the construction adopted in the cases of *Lynip* v. *Buckner* and *Dennis* v. *Caughlin*.

II.   In one respect this case presents a novel feature. Upon the evidence, oral and documentary, it is certain that mistakes or fraud occurred in at least two precincts of the county. In Beowawe five ballots not strung upon a string with the other ballots were returned either in the envelope containing the ballots that were used, or the ballots that were unused, to the office of the county clerk. Witnesses were called to prove that those ballots had been cast at the election in that precinct, but had not been counted by the election board for contestant on account of some supposed defects. The witnesses testified to nothing tending to identify the ballots found in the envelope containing the ballots, but not strung with the other ballots that had been counted, as the ones that had been voted at Beowawe, and not counted by the election board for contestant. This testimony was given before the court counted the ballots to which objection had been made. When the ballots were counted, it appeared upon the closest scrutiny that two of the ballots were absolutely perfect, and, upon comparison, it appeared that both of them had been marked by the same person. The court will find upon an inspection of those two ballots that they are so perfect that no man not a congenital idiot could have possibly refused to count them on account of any defect supposed or real. Counsel for contestee, in view of these suspicious circumstances, and the further circumstance testified to by the county clerk that the envelope containing the

unused ballots had been broken open, asked leave of the court to count the ballots and compare them with the poll book for the purpose of ascertaining whether two ballots unused had not been abstracted from the envelope containing the unused ballots, and either added to the ballots that had been voted or substituted for two defective ballots that had been voted and abstracted. Under the law it is almost impossible to commit a fraud of this character without detection if counsel is permitted to count the ballots used and unused and compare them with the poll book. (Gen. Stats. 1549, 1552; Stats. 1891, sec. 22, p. 45.) No efforts should be spared by our courts in probing possible election frauds, but notwithstanding this plain duty of the court, and the fact that days were spent in the trial of the case that should have occupied one or two days at most, and notwithstanding the fact that our court is not overrun with business, the court would not devote even an hour of its time to the investigation of these suspicious circumstances with a view to reopening the case should it appear that a fraud had been practiced.

III. It further appeared that in Eureka precinct No. 2 either the election board had made a mistake, or the court had, in counting the vote for respondent. The court found that three more votes had been cast in that precinct for respondent than the election board had found. Counsel for contestee announced to the court that, upon the count of the votes of that precinct that were not objected to by either party, he had noticed, after the count by the court, that there was one ballot amongst those that had been counted with a cross opposite the name of the respondent and also opposite the name of one Burdick, another candidate for sheriff, and that probably inadvertently other votes had been counted for respondent without objections that were equally defective, or that possibly a fraud might have been committed as in the case of Beowawe, but the court was equally firm in its refusal to grant leave to counsel to examine and count the ballots for the purpose of correcting a mistake or showing fraud, the only reason given being that counsel had been admonished, when the count of the vote was commenced, to be very careful in the conduct of the count.

IV.   If, upon an examination of the ballots and a comparison with the poll book, it had appeared that fraud had been committed or a mistake made changing the result of the election, would it not have been the duty of the court to have reopened the case for the purpose of correcting the mistake or permitting the introduction of evidence showing the fraud? I think there can be but one answer to that question.   It would have been the duty of the court, and a failure to reopen the case under such circumstances would have been cause for reversal.   Why, then, is it not good cause for reversal when the court absolutely refuses to permit counsel to examine the evidence that has been offered and admitted in the case in connection with documentary evidence that counsel had a right to examine under the law?

V.   Upon a considerable number of ballots, both for contestant and contestee, in Eureka precinct No. 2, the voter was given a ballot with the stubs attached; when the ballot was returned by the voter to the inspector he tore off the number on the right-hand side of the ballot, but did not tear off the number on the stubs before depositing the ballot. These, under the ruling in *Lynip* v. *Buckner*, should be counted.

*Robt. M. Clarke*, and *Peter Breen*, for Respondent:

I.   The failure of the election officers to remove the stubs from twenty-two of the ballots polled in Precinct No. 2 was fatal to the validity of such ballots.   The stubs and numbers upon them were distinguishing marks, and rendered the ballots capable of identification.   (Stats. 1891, secs. 26, 30, p. 46.)   Permitting the stubs and numbers to remain on the said ballots destroyed the secrecy of the ballot guaranteed by the constitution.   (Art. II, sec. 5, Const. Nev.; *Ritchie* v. *Richards*, 47 Pac. Rep. 670–681; *Williams* v. *Stein*, 38 Ind. 89; *People* v. *Pease*, 27 N. Y. 45–81; *Buckner* v. *Lynip*, 22 Nev. 426.)

II.   The case of Rebel Creek precinct in *Buckner* v. *Lynip*, referred to, is parallel.   In that case there was clear and uncontradicted evidence that the failure to tear off the strip containing the number of the ballot was the result of a mistake upon the part of the election officers.   In the case of the stub ballots polled and counted in Eureka precinct

No. 2, there is no such evidence. (*Buckner* v. *Lynip*, 22 Nev. 426.)

III.   If such ballots as those denominated "stub ballots" be deemed valid, the Australian ballot law is a dead letter, the main object of the law, to-wit: secrecy, being entirely done away with.   Corruption and intimidation under such a construction must become the order of the day, and it will be fully as easy, if not more so, to bribe the evil minded than under the old system.

IV.   The court was entirely justified in refusing to reopen the case and re-examine the ballots of Precinct No. 2, or any other precinct, as the case had been closed by both parties and submitted for judgment, and, furthermore, the ballots were not in the same condition as when first examined and counted, there having been the aforesaid recount of the same. After a case has been closed and submitted, it is in the discretion of the court to permit additional evidence or not, and if such discretion be not abused, there is no error. (*Lamance* v. *Byrnes*, 17 Nev. 197; *McLeod* v. *Lee*, 17 Nev. 103.)

V.   It would have been an unpardonable injustice to respondent to permit a reopening of the case and re-examination of the ballots under the circumstances, and more especially as there had been a recount by the county commissioners eight or nine days previous.   The ballots could not possibly have been in the same condition, as they had been handled and thumbed over by the commissioners and others in the meantime.

By the Court, MASSEY, J.:

The respondent and appellant were rival candidates for the office of sheriff of Eureka county, at the general election held therein, on the 3d day of November, 1896; the canvass of the returns of the various election precincts made by the board of county commissioners of said county on the 10th day of November, 1896, gave the respondent 164 votes, and the appellant 168 votes, and an order was thereupon made by said board declaring the appellant duly elected to the said office, and a certificate of election was issued to him as such.   On the 11th day of December, 1896, the respondent commenced this action to contest the election of appellant

to said office, and in the statement or complaint alleged, as grounds therefor, malconduct on the part of the election officers of precincts numbered 1, 2, 3, 5, 6, 10 and 11 in failing to count legal ballots cast for respondent at said election, and in counting illegal and void ballots for the appellant. The appellant answered denying the allegations and averred malconduct on the part of the election officers in each and all of the precincts of said county in failing to count therein certain legal ballots cast for the appellant and counting certain illegal and void ballots for the respondent.

Under these issues trial was commenced on the 23d day of December, 1896, before the court without a jury. During said trial all the ballots cast at said election in the various precincts of said county were offered in evidence, and the appellants objected to the counting of 70 thereof for the contestant upon the ground that each of said ballots had marks and words made and written thereon by which it could be identified. The respondent objected, during said trial, to the admission of 67 or 68 of said ballots, for the same reasons. The cause was then continued for further hearing, until the 11th day of January, 1897, when testimony was offered on the part of the respondent relating to certain votes cast at Beowawe precinct. Thereafter, the court heard the argument of the counsel upon the objections to the admission of the ballots and, after considering the same, overruled the objections of the appellant to all of the ballots for contestant, except 14, to which rulings exceptions were taken; the court also overruled the objections of the respondent to the various ballots for appellant, except 13 thereof, to which rulings exceptions were taken. Thereupon the court announced that the respondent had received 158 votes for said office, and the appellant 156 votes therefor.

The appellant then moved the court for leave to compare the number of votes cast in the Beowawe precinct at said election, as shown by the registry list used by the inspectors and clerks of election at said precinct with the number of ballots returned to the county assessor as having been voted in said precinct, for the purpose of ascertaining whether more ballots were returned than the number of voters who voted in said precinct.

Appellant further moved the court for leave to examine the ballots returned by the election officers of Eureka precinct No. 2 as having been voted at said election, and to examine the registry list used by the election officers of said precinct, and to count the number of voters who voted at said election as shown by said registry list of said precinct for the purpose of ascertaining whether a larger number of ballots were returned than voters who voted at said precinct, and for leave to examine said ballots for the purpose of ascertaining whether any mistake or mistakes had been made by the court in counting said ballots. Objections to said motion were made by the respondent, and on the 16th day of January, 1897, the court overruled said motion, to which ruling the appellant excepted.

Judgment was entered on the 21st day of January, 1897, in favor of the respondent, and from that judgment both parties have appealed.

The contention of the respondent that the statement should not be considered by this court for certain reasons cannot be sustained. This action was argued orally upon its merits on the 19th day of March, 1897, on which date the respondent filed a brief. No objections were made to the statement during said argument, nor were any objections noted to the same in the brief filed at that time. Permission was granted to respondent to file a further brief in the case, and in that brief the objections to the statement were for the first time made. It has been held by this court that, when counsel appear and orally argue a case upon its merits, and afterwards, by leave of the court, file a brief and therein rely upon objections to the statement, that the oral argument upon the merits amounts to a waiver of the objections to the statement. (*Truckee Lodge* v. *Wood*, 14 Nev. 293.)

Appellant contends that the court erred in refusing appellant leave to examine and count the ballots returned from Beowawe and to compare them with the poll books used in said precinct, and also to pursue the same course with reference to ballots of Eureka precinct No. 2. The reasons urged upon the court for the granting of said motion were that it appeared in evidence that the ballot box at Beowawe precinct was not sealed when delivered to the county clerk of Eureka

county, and the envelope containing the unused ballots returned by the inspectors of said precinct had been partially broken open before a canvass of the returns was made; that two of the ballots returned by the election officers of said precinct as having been voted and not counted by said officers were perfect ballots containing no word or mark that could possibly render them void; that it appeared from the returns of Eureka precinct No. 2 that 59 votes had been cast for respondent, and that, from the count made by the court of the votes of said precinct, it appeared that 62 votes had been cast for said respondent.  It further appears from the testimony of Charles A. Jones and J. H. Murphy, two of the election officers of Beowawe precinct, that there were five ballots regularly voted and polled in said precinct which the inspectors had refused to count for some supposed defect; that these ballots were returned with the other ballots to be counted or not by the board of county commissioners; that all the ballots counted in said precinct were strung, and the five ballots cast but not counted were not strung.  It further appears that the ballots in these precincts, together with all the other ballots of the other precincts of the county, had been used and handled by the board of county commissioners of said county on the 5th day of January, 1897, upon a recount upon the application of another candidate for the office of assemblyman.  It further appears that during the trial of this action that the registry lists of these precincts had not been offered in evidence, and were not in evidence.

Upon these facts the appellant insists the court erred in denying his motion.  We cannot so hold.  No showing whatever is made on the part of the appellant that any fraud had been committed by any person or persons in Beowawe precinct.  It seems that the ballots from that precinct, including these ballots not counted, had all been presented to the court, carefully examined by court and counsel, and counted.  The same is true of the ballots cast in Eureka precinct No. 2.  Fraud was not charged against the election officers of said precinct in counting these ballots.  From the reading of the counsel's motion, the only purpose thereof was to ascertain whether evidence might exist favorable to appellant.  A stronger showing than this must be made before it can be

held to be error of the trial court in refusing to reopen a case after the same has been submitted and the court has announced its decision. After a case has been closed and submitted, it is in the discretion of the court to reopen the same and permit additional evidence to be taken or not, and if such discretion is not abused, there is no error. (*McLeod* v. *Lee*, 17 Nev. 119; *Lamance* v. *Byrnes*, 17 Nev. 202.)

The ballots to which objections were made have been transmitted to this court under the terms of stipulations. These stipulations provide that, in determining what ballots shall be rejected on account of the markings thereon, the court shall inspect said ballots, instead of the statements, and shall count or reject said ballots as they may appear to be legal or illegal, valid or invalid, in determining the right of either of said parties to said office. A large number of these ballots are before us, and it is hardly possible to particularly describe the markings on each, hence we will describe only such as are deemed to have been erroneously counted or rejected by the trial court.

It appears that the ballots for all the precincts in Eureka county contained the names of the township officers to be elected in Palisade and Eureka townships. The appellant objected to five ballots cast in Diamond precinct No. 10 for the respondent and counted by the court. They are marked Defendant's Exhibits 70, 71, 72, 73 and 74. An inspection of these ballots fails to disclose any markings thereon that in any manner affect their validity, and they were properly counted by the court. The respondent objected to three ballots cast in the same precinct for the appellant and counted by the court, which are marked Plaintiff's Exhibits LLL, MMM, NNN. These ballots are also clean, and were properly counted by the court. The same may be said of the two ballots cast in Keystone precinct No. 11 for the appellant and counted by the court, marked Exhibits PPP, OOO. The appellant also objected to two ballots cast in Mineral Hill precinct No. 7 for the respondent, but a careful inspection of these ballots fails to disclose any mark whatever upon either that would render it void. The ballots are marked Defendant's Exhibits 67 and 68. On the one marked Exhibit 67 there is an irregular mark of a pencil over the

names of the candidates for justice of the peace of Eureka township, which was clearly made accidentally and not deliberately. The court properly counted these ballots for the respondent. One ballot cast in precinct No. 9 for the appellant and counted by the lower court was objected to by the respondent and marked Plaintiff's Exhibit KKK. This ballot, upon inspection, is not in any manner defective, and was properly counted.

In precinct No. 8, a ballot marked Defendant's Exhibit 69 was counted for the respondent over the objection of the appellant. This was error. A cross deliberately made by the voter appears upon said ballot in the blank space for presidential electors under the words "Vote for three," and not opposite the name of any candidate whatever. This ballot should have been rejected. Also, a ballot was cast in said last-named precinct for the appellant, and counted by the court for him, over the objection of the respondent, which was marked Plaintiff's Exhibit JJJ. This ballot is clean, and was properly counted.

In Palisade precinct ballots marked Defendant's Exhibits 63, 64, 65 and 66 were cast for the respondent Sweeney. The court refused to count Exhibit 66. This was proper, as the crosses after the names of two of the candidates for presidential electors were placed within a square made deliberately by the voter. The said Exhibits 63, 64 and 65 were counted by the court. Exhibits 63 and 64 were properly counted, as these ballots are clean. Exhibit No. 65 should not have been counted, as the person voting the same placed a cross after the name of M. P. Murphy, a candidate for justice of the peace of Eureka township, and a cross after the name of John J. Lucey, a candidate for constable of the same township. The person who voted this ballot must have been a qualified elector of Palisade precinct or township. As such he had no right whatever to vote for the township officers of Eureka township, as the law provides that justices of the peace and constables shall be elected by the qualified electors of their respective precincts or townships. (Gen. Stats. 1644.) The voter not only placed upon his ballot a distinguishing mark when he attempted to vote for township officers residing in another township, but did so in

direct violation of the provisions of the above-cited section. It might be urged that the officer who prepared these ballots was at fault in causing to be printed thereon the names of the township officers of Eureka township. Our Australian ballot law is silent as to this matter, and we think that the voter is more at fault in attempting to elect officers for which he has no right to vote, and, in making this attempt, deliberately places upon his ballot a mark that destroys its secrecy and could be used for the corruption and fraud that the law intended to prevent. For these reasons Exhibit No. 65 should not have been counted for the respondent.

Three ballots were also cast in said precinct for the appellant Hjul, marked, respectively, Exhibits CCC, HHH and FFF, which are subject to the same objections as are noted against Exhibit No. 65. The voters who cast the three last-named exhibits also voted for some or all of the officers to be elected in Eureka township, and thereby rendered these ballots void. There was also cast at said precinct one ballot for the appellant, which the court refused to count, marked Plaintiff's Exhibit GGG. This refusal was correct, as this ballot was marked with a purple, instead of a black, pencil. There were also cast at said precinct three other ballots for the appellant, marked Exhibits DDD, EEE and BBB, which were counted by the court for the said appellant over the objections of the respondent. These ballots are clean and properly marked, and were properly counted.

There were cast in Ruby Hill precinct 17 ballots to which objections were taken. Ballots marked Exhibits 44 and 41, cast for the respondent, were not counted by the lower court. Exhibit No. 41 is void for the reason that the elector voting the same made a cross with a lead pencil near the center and top thereof and immediately under the cross printed thereon; also, another cross with lead pencil in the blank space beneath the name of H. S. Starrett, a candidate for short-term regent; also, another cross with lead pencil near the middle of said ticket and immediately following the words "For members of Assembly." The ballot marked Exhibit No. 44 was also rejected by the lower court. This, also, was correct, as the elector voting said ballot had attempted to vote for the township officers of Eureka and Palisade townships by making

the proper crosses after the names of the candidates for whom he desired to vote. Under the rulings herein this ballot is also void.

There was also cast at said last-named precinct a ballot for the respondent, marked Exhibit No. 43, which was counted for the said respondent over the objection of the appellant. The court did not err in so counting this ballot. The crosses thereon are not perfect, but they are sufficient, and the ballot is valid. Ballot marked Exhibit GG, and cast at said precinct for the appellant Hjul, and counted by the court for the appellant over the objection of the respondent, is void, for the reason that the person voting the same attempted to vote for the township officers of Eureka and Palisade townships by placing a cross after the names of the township officers for whom he desired to vote. This ballot should have been rejected by the court. Ballot marked Exhibit XX, and cast for the appellant at said precinct, and not counted by the court, over the objection of the appellant, was properly rejected, for the reason that the same was disfigured by a partially erased cross after the name of A. P. Anderson, a candidate for long-term county commissioner.

Ballot marked Exhibit TT, cast for the appellant at said precinct, was not counted by the lower court over the objection of the appellant. There is no apparent reason for this refusal on the part of the court from an inspection of this ballot, and it should have been counted for the appellant. It is clean, and the crosses thereon are above the average. The same may be said of ballot marked Exhibit ZZ, cast at said precinct for the appellant, which the court refused to count. Ballots marked Exhibits WW, RR, QQ, PP, YY, NN, VV, and AAA, cast at said precinct for the appellant Hjul, and counted for him by the court over the objection of the respondent, are clean ballots, and were so properly counted. Ballots marked Exhibits 42 and 45, cast at said election precinct for the respondent Sweeney, and counted for him by the court over the objection of the appellant, are clean ballots, and were so properly counted.

In Beowawe precinct No. 5 ballots marked Exhibits 49, 50, 51, 52, 55, 56, 57, 58, 60, 61 and 62 were voted for the respondent Sweeney, and so counted by the court over the objection

of the appellant. An examination of these ballots fails to disclose any marks thereon that would render them illegal or void, therefore there was no error in counting the same. In the same precinct ballots marked Exhibits 53 and 59 were cast for the respondent, and counted for him over the objection of the appellant. This was error. The electors who voted these ballots attempted to vote for the township officers of the townships of Eureka and Palisade by placing the cross opposite the names of the candidates for the respective township offices for whom they desired to vote. In the same precinct ballot marked Exhibit 54 was voted for said respondent, and rejected by the court in the count, over the objection of the respondent. This ballot is marked with a cross opposite the name of C. L. Broy, a candidate for long-term county commissioner, which the voter has deliberately and intentionally attempted to scratch out and obliterate with a pencil, thereby disfiguring the ballot to an extent that justified the court in refusing to count the same.

We now come to the consideration of the three ballots cast at said Beowawe precinct, alleged to have been cast for the respondent, but were not counted by the election board of said precinct for him. We think it clearly appears from the testimony of C. A. Jones and J. H. Murphy, two of the election officers of said precinct, that five ballots were voted at said precinct at said election, and, for some reason or reasons not apparent in the record, were not counted by the election officers of said precinct. These ballots are marked Exhibits 46, 47 and 48, and were counted by the district court for the respondent, over the objection of the appellant. It appears from the testimony of the witnesses that there were five ballots voted at said precinct which were not counted, but only three thereof, for some reason, have been transmitted to this court. Of said ballots, Nos. 46 and 48 were properly counted for the respondent. No. 47 should not have been counted by the court for the respondent, for the reason that the person who voted the same attempted to vote for John McKernan, a candidate for justice of the peace of Eureka township, and for T. R. Jewell, a candidate for constable of Palisade township, by placing the cross required by law opposite their names.

There were cast at said election, in Eureka precinct No. 1, 12 ballots for the respondent, marked Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12. Exhibits 1 and 2 thereof were rejected by the court in the count thereof, over the objection of the respondent. This ruling of the court was clearly correct. The said Exhibit No. 1 has a cross made with a pencil in the vacant space below and to the right of Peter Breen, a candidate for district attorney at said election. Said Exhibit No. 2 has an erasure of a cross opposite the name of A. P. Anderson, a candidate for long-term county commissioner, and a perpendicular mark with horizontal marks crossing the same at the top and bottom opposite the name of Joseph R. Ryan, a candidate for presidential elector. Said Exhibit No. 12, being a ballot cast for the respondent and rejected in the count by the court over the objection of the respondent, has the strip on the right-hand side thereof, bearing the number thereof, attached, and written in ink on the back of the same is the word " Canceled." Without further explanation, which the record does not give, as to when and by whom the word was written thereon, we cannot say the court erred in refusing to count this ballot. Said Exhibit No. 3, which was counted by the court for the respondent over the objection of the appellant, should have been rejected for the reason that opposite the name of W. A. Massey, a candidate for justice of the supreme court, there were placed three straight lines crossing each other so as to distinctly make a star. From the course and direction, the color and uniformity of the three lines composing this star, it is clearly apparent that the person voting said ballot deliberately and intentionally made the same. Said Exhibits 6, 7 and 9, being ballots cast in said precinct at said election for the respondent, and counted by the court for him over the objection of the appellant, should have been rejected and not counted by the court, for the reason that the person voting these ballots had attempted to vote for the township officers of Eureka and Palisade townships. Said Exhibits 4, 5, 8, 10 and 11, being ballots voted at said precinct for the respondent and counted for him by the court over the objection of the appellant, were properly counted, for the reason that said ballots do not disclose any marks thereon that would render

them illegal or void under our law. Ballots marked Exhibits A, B, C, D, E, F, G, H, I, J and K were voted at said election precinct at said election for the appellant. Said Exhibit B was rejected and not counted for the appellant over his objection. The action of the court was correct. A horizontal line opposite the name of John Pardy, a candidate for county surveyor, was made thereon by the person who voted said ballot. Two crosses also were made in the square opposite the name of George Russell, a candidate for presidential elector. Said Exhibit J, being a ballot cast for the appellant and rejected by the court in its count over the objection of the appellant, is clearly void and illegal. It bears a cross made with a lead pencil in the vacant space near the center of the first column on the left-hand side of said ticket, between the words " For presidential electors " and the words " Vote for three." Exhibit G, cast for the appellant at said precinct and rejected by the court in its count, is clearly illegal and void. It bears a cross in the vacant space beneath the name of H. S. Starrett, a candidate for short-term regent of the state university. The person who cast said ballot also attempted to vote for the candidates for township officers of the townships of Eureka and Palisade. Exhibit H, being a ballot cast in said precinct at said election for the appellant and not counted by the court, is also clearly void. The person who voted the same made distinct crosses with a lead pencil immediately beneath the names of William J. Bryan and Arthur Sewall. Said Exhibits E, I and K, being ballots cast for the appellant in said precinct at said election and counted for him by the court over the objection of the respondent, are clearly illegal and void, for the reason that the persons who voted said ballots attempted to vote for the township officers of the townships of Eureka and Palisade by placing crosses opposite the names of the candidates of their choice on said ballots, and, under the rulings heretofore made, said ballots should not have been counted. Exhibits A, C, D and F, being ballots cast in said precinct at said election for the appellant and counted by the court for him over the objection of the respondent, are legal ballots, no marks or words appearing thereon that would affect their validity under our law.

Exhibits 13, 21, 22, 26, 28 and 39 are ballots cast in Eureka precinct No. 2 for the respondent Sweeney, each of which the court refused to count for said respondent over his objection. Said Exhibit No. 13 was correctly rejected by the court, for the reason that the person voting the same made two distinct crosses thereon immediately under the names of William J. Bryan and Thomas E. Watson. Exhibit No. 21 was also properly rejected by the court, for the reason that opposite the name of Benjamin F. Leete, a candidate for presidential elector, there had been placed marks of impossible description that could not be called a cross. Said Exhibit No. 26 was also properly rejected by the court, notwithstanding the objection of the respondent, for the reason that the person casting said ballot placed in the square opposite the name of the respondent marks with a pencil that more nearly resemble a spider than anything else. No other marks were made upon this ballot. Said Exhibit No. 28 was also properly rejected by the court, for the reason that the party voting the same had indiscriminately placed crosses with a pencil on various parts thereof; he also had attempted to vote for the township officers of Eureka and Palisade townships. Exhibit No. 39 aforesaid was also properly rejected by the court, for the reason that the person voting the same had placed crosses immediately beneath the names of Bryan and Sewall thereon. Said Exhibit No. 22 should have been counted by the court for the respondent, as a careful examination thereof fails to disclose any marking thereon not authorized by law. Exhibits 14, 17, 24, 30, 31, 32, 33, 38 and 40 are ballots voted in said last-named precinct for the respondent and counted by the court over the objection of the appellant. These ballots are all legal and valid, nothing appearing thereon prohibited by the law.

Exhibits 23, 25, 29 and 34 are ballots cast in said precinct at said election for the respondent, and counted for him by the court over the objection of the appellant. This action of the court cannot be sustained, as each of said ballots bears crosses made by the voter thereof after the names of the candidates for township offices in Eureka and Palisade townships, and, for that reason, is void. Exhibit 27 is a ballot cast also at said precinct for the respondent, and counted for

him by the court over the objection of the said appellant. This ballot must also be held to be void, as it bears a perpendicular mark made by a lead pencil opposite the name of John Pardy, a candidate for county surveyor. Exhibits N, O, OO, X and Y are ballots cast at said last-named precinct for the appellant, and rejected by the court in its count, over the objection of said appellant. Said Exhibit N was properly rejected, as there is appearing thereon a cross immediately beneath the name of William J. Bryan. Said Exhibit O was also properly rejected by the court, as thereupon are crosses immediately beneath the names of William J. Bryan and Arthur Sewall. Said Exhibit OO was also properly rejected, for the reason that two crosses were marked on said ballot by the voter thereof opposite the name of Joseph R. Ryan, a candidate for presidential elector herein. Said Exhibit X was also properly rejected by the lower court because the voter thereof had placed crosses immediately above the names of Bryan and Sewall. Said Exhibit Y was also properly excluded by the court, for the reason that the elector has placed a cross thereon in the vacant space on the extreme lower right-hand corner thereof, not opposite the name of any candidate. Exhibit W is also a ballot cast in said precinct at said election, and counted by the court for the appellant over the objection of the respondent. This was error. The cross is directly upon the line between the names of the appellant and one J. C. Ravell, who was also a candidate for sheriff at said election, and it is impossible from the position of the cross to determine whether the voter intended to vote for the appellant or the said Ravell, therefore, said vote should have been rejected. Exhibits P, BB, CC, EE and GG are ballots voted in said precinct at said election for said respondent, and counted by the court for him over the objection of the appellant. Each of these ballots should have been rejected by the court, as there are marked thereon by the voter with a lead pencil crosses opposite the names of the candidates for township officers in Eureka and Palisade townships. Exhibits AA, FF, V and Z are ballots voted in said precinct for said appellant, and counted for him by the court over the objection of respondent. The action of the

court in so counting these ballots was correct, as there is nothing on the face of the same that would render them illegal and void under the law.

There were cast at said precinct 22 ballots which the respondent contends are void. Fourteen of these ballots were cast for the appellant, and 8 were cast for the respondent. To each is attached the stub bearing the printed number. The record discloses no facts, other than these, in relation to these ballots. The respondent contends that the failure of the election officers to remove the stubs from these 22 ballots rendered each and all void, for the reason that the stubs with the numbers thereon were distinguishing marks, rendering the ballots capable of identification, and thereby destroying the secrecy of the ballots.

. Section 12 of the Australian ballot law provides that on each ballot a perforated line shall extend from the top to the bottom one-half inch from the right-hand side of such ballot, and upon the strip thus formed there shall be no writing or printing except the number of the ballot, which shall be upon the back of the strip in such position that it shall appear on the outside when the ballot is folded; that the number on each ballot shall be the same as that on the corresponding stub, and the ballots and stubs shall be numbered consecutively in each county. Section 13 of the same act provides that all ballots, when printed, shall be bound in stub books of fifty and one hundred ballots each. Section 19 provides that a person desiring to vote shall give his name and address to one of the clerks of election, who shall announce the same, and, if the other clerk shall find the name upon the registry list, he shall repeat the name and address; a ballot shall then be given to the voter, and the number of said ballot shall be written by one of the clerks of election upon the registry list opposite the name of the voter receiving it.

Section 20 provides, in effect, where and in what manner the voter shall mark his ballot, how the same shall be folded, and after folded to whom it shall be delivered. It also requires the inspector receiving the ballot, and before depositing the same in the box, to separate or detach the strip on the right-hand side thereof.

Section 24 provides that no ballot shall be deposited in the ballot box unless the water mark appears thereon, and unless the slip containing the number of the ballot has been removed by the inspector.

Section 26 provides that, in counting the votes, any ballot not bearing the water mark shall not be counted; that when a voter marks more names than there are persons to be elected to an office, or if, for any reason, it is impossible to determine the voter's choice for any office, his vote for such office shall not be counted, and that any ballot upon which appears words, names or marks, written or printed, except as provided in the act, shall not be counted. (Stats. 1891, 40, *et seq.*)

The failure of the election officers to detach the stub bearing the number of the ballot destroys its secrecy; but whether such failure shall render the ballot void, and thereby disfranchise the voter, is a new and important question.

The case of *Buckner* v. *Lynip*, 22 Nev. 426, is cited by the appellant as being directly in point and decisive of this question. In that case the election officers failed to remove the perforated strip on the right of each ballot. It was not charged in that case that the failure of the election officers in this matter was fraudulent or intentional. Section 26, above cited, does not expressly direct that a ballot upon which this stub has been left shall not be counted. The law required the stub to be attached to the ballot when printed, and it also inferentially required that the ballot should be detached from the stub before it was delivered to the voter. In *Buckner* v. *Lynip*, *supra*, the court say that a study of this statute leaves no doubt that its purpose is to secure a fair expression of the will of the electors of the state, by secret ballot, uninfluenced by bribery, corruption or fraud. This being the object of the law, it should be so construed as to remedy the evil against which its provisions are directed, and at the same time not to disfranchise the voter further than is necessary to obtain that object.

The case at bar is clearly distinguishable from the case of *Buckner* v. *Lynip*, *supra*. In that case all the ballots cast in Rebel Creek precinct were so cast without first having the strip detached by the accidental blunder of the election offi-

cers, and without the knowledge of the voters. It was shown that not a voter knew that the law was not being complied with, and a fair inference from the testimony was that it was not known until after the polls had closed. Considering the fact with the provisions of the law bearing upon the matter, the court correctly held there was a reason in the law itself for not holding those ballots void, and upon that point the court say: " If a citizen votes a ballot not bearing the water mark, he is somewhat in fault himself. * * * On the other hand, the slip is to be removed by the inspector after the ticket is surrendered to him, and with this the voter has nothing to do; and very often, as in this case, it might be left on the ballot by oversight or accident."

It was the duty of the election officers to deliver to the elector a proper ballot—one bearing the water mark with the strip bearing the number attached to the right thereof, detached from the stub. It was equally the duty of the voter to know the stub was detached, that the ballot bore the water mark, and had attached thereto the strip on the right-hand side bearing the number. He had the means of knowing these facts, and should be held to exercise some intelligence and some diligence in casting his ballot. Where he blindly accepts a ballot from an election officer bearing marks that will destroy the secrecy of the ballot, he should be held to know that fact. It will not do to cast all responsibility upon the officer except in those matters where the officer has the exclusive right to act, and where his acting would destroy the validity of the ballot.

The case of *Buckner* v. *Lynip* is thus distinguished from the case at bar, and was decided upon the peculiar facts surrounding it. We must hold, therefore, that the court erred in counting the ballots voted in Eureka precinct No. 2 having the stubs attached.

It appears from the record that the appellant received 103 votes for said office to which no objections were made, to which add the number allowed by this court under the stipulations and it will give him a total vote of 131.

It also appears from the record that the respondent received 98 votes to which no objections were made, to which add the number found under the stipulations and it will give him a

total vote of 138. The 22 votes cast in Eureka precinct No. 2 with the stub attached, and rejected by this court, are not considered in the above count. If considered they would not change the result.

The judgment will, therefore, be affirmed.

### ON PETITION FOR REHEARING.

By the Court, MASSEY, J.:

The appellant urges that a rehearing be granted in this action, for the reason that this court has assumed that there are only two civil townships in Eureka county, when, in fact, there are four; and that in the count made by this court ballots were counted for respondent upon which crosses were made opposite the names of wrong township officers, other than those indicated in the opinion.

The record in the case fails to disclose other townships than Eureka and Palisade. The ballots in all the precincts have printed thereon the names of the township officers for Eureka and Palisade townships only. If it is, then, a fact that there are two other townships, to wit: Ruby Hill township and Beowawe township, then the count made by this court of the contested ballots should be slightly changed. This court counted for the appellant ballots cast in Ruby Hill precinct marked Exhibits VN, NN, TT, RR and PP, each of which ballots was marked with a cross opposite the names of the candidates for township officers of either Eureka or Palisade townships. These ballots, under the showing made by the petition, should have been rejected by this court. In the same precinct we counted one vote, marked Exhibit 45, for the respondent, which, for the reason above indicated, should also have been rejected. Only two ballots were brought up to this court under the stipulation which were cast at Mineral Hill precinct No. 7, and neither of said ballots was cast for any township officer. Of the two ballots before the court, cast in Keystone precinct No. 11, both of which were voted and counted for Hjul, the one marked Exhibit PPP was also voted for the township officers of Eureka township, and the one marked Exhibit OOO was not voted for any township officer. Ballots marked Exhibits LLL and MMM, cast in Diamond precinct No. 10, were counted by the court for

appellant, and each of said ballots was cast for the township officers of Eureka township. The ballot .marked Exhibit NNN, cast in said precinct, and counted in this court for the appellant, was voted for the township officers of both Eureka and Palisade townships, and should, for the reason above given, be rejected. Ballot marked Exhibit 70, and voted in said precinct for the respondent, was also voted for the township officers of Eureka township. Ballots marked Exhibits 71, 72, 73 and 74 of said precinct were voted and counted for the respondent, and for the township officers of both Eureka and Palisade townships. These ballots should have been rejected. Only one ballot from precinct No. 9 is before this court. It was cast and counted for the appellant. The elector voting the same made the proper cross opposite the names of the township officers for Eureka township. Only two ballots have been brought before the court having been cast in precinct No. 8. The one marked Exhibit JJJ was counted by the court for the appellant. This ballot was marked with a cross opposite the names of the candidates for township officers of Eureka township. Ballot marked Exhibit No. 69, and cast at said precinct for the respondent, was rejected by this court. Of the ballots counted in Beowawe precinct No. 5 for the respondent by this court, Exhibits 49 and 61 bear the proper cross opposite the names of the township officers of Palisade township, and should have been rejected under the averments of the petition for rehearing. The other ballots cast in this precinct and before this court are correct. The ballots from the other precincts, not considered herein, were passed upon by this court in its opinion. Under the allegations of the petition for a rehearing, and by giving the appellant the benefit of the ballot counted for him in precinct No. 9, and the one counted for him in precinct No. 8, marked Exhibit JJJ, and the one counted for him in Keystone precinct No. 11, marked Exhibit PPP, and without considering the 22 ballots cast in Eureka precinct No. 2 and rejected by this court in its opinion, the count will stand as follows: Sweeney, 131 votes; and Hjul, 125 votes.

A rehearing is therefore denied.