HARDY et al. v. BEAVER CITY et al.

No. 2337. Decided May 10, 1912 (125 Pac. 679).

1. INTOXICATING LIQUORS — ELECTIONS — CONTESTS — STATUTORY RIGHT. An election in a city to determine whether the sale of intoxicating liquors shall be authorized or denied therein is an election, within Comp. Laws 1907, sec. 914, authorizing the contesting of the election on any proposition submitted to the vote of the people, the official ballot at the election being "For Sale" and "Against Sale," with a circle after each phrase to enable the voters to indicate their preference by placing a mark in either circle. (Page 82.)

2. ELECTIONS—NUMBERING BALLOTS—SECRECY OF BALLOTS. The numbering of the ballots by election officers acting under the honest belief that the same is proper, and without any intention of destroying the secrecy of the ballot, or ascertaining how any elector voted, and without intimidating or influencing any voter, or preventing any one from voting, does not vitiate the election, because violating the secrecy of the ballot guaranteed by Const., art. 4, sec. 8, providing that all elections shall be by secret ballot.[1] (Page 84.)

3. ELECTIONS—SECRECY OF BALLOT—CONSTITUTIONAL GUARANTY. The secrecy of the ballot guaranteed by Const., art. 4, sec. 8, declaring that all elections shall be by secret ballot, is intended

---

[1] Ritchie v. Richards, 14 Utah, 345, 47 Pac. 670.

to protect the voters from being unduly influenced or interfered with in the exercise of the franchise; but the guaranty is not intended to defeat the election by taking advantage of irregularities. (Page 87.)

4. ELECTIONS—INVALIDITY—FRAUD—INTIMIDATION. Where an election is conducted in violation of a constitutional or statutory provision, or where, through an act prohibited by law on the part of the voters, or some of them, the result of an election is affected, or where fraud, intimidation, or other illegal methods are practiced, the election cannot stand. (Page 87.)

5. ELECTIONS—SECRECY OF BALLOT—CONSTITUTIONAL GUARANTY—CONSTRUCTION. The secrecy of the ballot guaranteed by Const., art. 4, sec. 8, providing that all elections shall be by secret ballot, does not require perfect secrecy in case printed ballots are used; but only approximate secrecy is required. (Page 88.)

6. ELECTIONS—VALIDITY—SECRET BALLOTS. Though ballots which were not secret were used and voted at an election, but the result was unaffected thereby, the ballots could not be adjudged void; for electors cannot be disfranchised by an act of election officers or others, unless such act violates a constitutional or statutory provision, or amounts to intimidation or fraud. (Page 89.)

7. ELECTIONS—MARKED BALLOTS—STATUTORY PROVISIONS. The numbering of the ballots by election officers under the honest belief that the same is proper is not placing a distinguishing mark on the ballots, within Comp. Laws 1907, sec. 848, defining the circumstances under which ballots must be counted or rejected, providing that no ballot shall be rejected for any error in stamping or writing the indorsements thereon by the election officers. (Page 90.)

APPEAL from District Court, Fifth District; *Hon. Joshua Greenwood,* Judge.

Action by J. W. Hardy and another against Beaver City and others.

Judgment for defendants. Plaintiffs appeal.

AFFIRMED.

*E. A. Walton, M. E. Wilson* and *O. A. Murdock* for appellants.

41 Utah—6

*William F. Knox* for respondents.

FRICK, C. J.

Appellants instituted this proceeding for the purpose of contesting and annulling the result of an election held in Beaver City, Utah. Said election was held pursuant to chapter 106, Laws Utah, 1911, and the question submitted was whether the sale of intoxicating liquors as a beverage should be permitted within said city or not. Upon a hearing the district court entered judgment declaring the election valid, from which judgment this appeal is prosecuted.

Before proceeding to a consideration of the questions presented by the record, it becomes necessary to dispose of a preliminary question raised by counsel for respondents. He contends that the provisions of Comp. Laws 1907, section 914, do not authorize a contest of the election in question; but, if such an election can be assailed, it must be done in some proceeding other than that contemplated by that section. We cannot assent to counsel's contention. Section 914, so far as material here, provides:

"The election of any person to any public office, the location or relocation of a county seat, *or any proposition submitted to the vote of the people may be contested.*" (Italics ours.)

The grounds for contest are then set forth; and the grounds stated in the complaint filed in this case are within those enumerated in said section.

The question submitted to the electors of Beaver City was whether the sale of intoxicating liquors as a beverage should be authorized or denied within the limits of said city. The form of the question on the official ballot was, "For Sale O" and "Against Sale O," and the voter indicated his preference by placing a voting mark, either in the circle placed after the words "For Sale," or in the one placed after the words "Against Sale." The election therefore was held to pass upon a "proposition submitted to the vote of the people," and thus comes within the purview of section 914, *supra.* The contention of counsel therefore cannot prevail.

Proceeding now to a consideration of the merits, we find that the controlling facts disclosed by the record, in substance, are: That on the 27th day of June, 1911, appellants were resident taxpayers of Beaver City, and on that day were engaged in the business of selling intoxicating liquors to be used as a beverage. That on that day an election was duly held in said city pursuant to the provisions of chapter 106, Laws Utah, 1911, to determine whether intoxicating liquors should be sold within said city as a beverage. That said city was divided into three voting districts, numbered 1, 2, and 3, respectively, and official ballots were prepared by the city officials to be voted in each of said districts at said election, which in substance and form were as required by law, except in this: That on the back thereof were printed the letters "No. ———." That the printer who was employed to print said ballots placed said letters on the back thereof without any direction from any one, supposing it was necessary that some one should number the ballots consecutively, and that by placing the proper figures after the letters aforesaid each ballot would receive its proper number. That the ballots were delivered to the election officials in that form and condition, and in districts No. 1 and No. 2 the officers assumed that the ballots should be numbered as indicated; and in said district No. 1 all the ballots were numbered, while in district No. 2 only a portion thereof were numbered, when it was discovered that the ballots should not be numbered; and in district No. 3 none of the ballots were numbered. That in district No. 1 there were 112 votes cast for sale and 146 against sale, all of which ballots were numbered, as aforesaid. In district No. 2, there were fifty-one ballots cast for sale and 113 against sale, 112 of which were numbered, and fifty-two thereof were not numbered. In district No. 3, 152 ballots were cast, eighty-one of which were for and seventy-one against sale, none of which were numbered. The total number of votes cast in the city was 574, 330 of which were against sale, while 244 were for sale. There were thus a majority of eighty-six votes against sale upon the face of the returns. It thus appears that out of the

whole number of ballots cast there were 370 that were numbered and 204 that were not numbered. Out of the 204, ninety-seven were cast for and 107 against sale, or a majority of ten against sale.

Appellants contend that the numbering of the ballots, as aforesaid, vitiated the election; and hence the district court erred in declaring it valid. Counsel assert that in numbering the ballots, as aforesaid, their secrecy was destroyed; and, further, that they should not have been counted, because said numbers constitute a distinguishing mark placed on the ballots; and, further, that the proposition of "against sale" did not carry, because not a clear majority of all the votes cast at the election were against sale. Section 8 of article 4 of the Constitution provides: "All elections shall be by secret ballot."

In view of the facts presented by the record, the following questions arise: (1) Did the placing of the numbers upon the back of the ballots destroy their secrecy? (2) If it be assumed that such was the case, did the casting of said ballots vitiate the election? (3) Did the numbering of the ballots constitute a distinguishing mark, within the purview of the Australian ballot law in force in this state, and were the ballots thereby made illegal?

The record discloses that when the first voter appeared at the polls to cast his vote in districts No. 1 and No. 2 he was handed a ballot numbered 1; and his name was written in the poll book opposite No. 1. A similar record was made with respect to subsequent voters: the only difference being that the numbering was in the order in which they appeared and voted. It is contended, therefore, that the proof is conclusive that by comparing the number of any particular ballot with the name which was written opposite the same number on the poll book any one could ascertain who voted a particular ballot, and how he cast his vote on the proposition whether for sale or against sale. It is contended that the secrecy of the ballot guaranteed by the Constitution and statutes of this state was thus destroyed. It may be conceded that in comparing the ballots with the poll book, as suggested, it could be

ascertained who cast a particular ballot, and from the ballot it necessarily was made to appear how such person voted upon the proposition, and that when these facts were ascertained the secrecy of the ballot was destroyed. The evidence, however, discloses that in placing the numbers on the back of the ballots the election officers acted honestly; and that they did so merely because they thought such a course was proper, and without any intention thereby of destroying the secrecy of the ballot, or to ascertain how any one voted upon the proposition. It also is made to appear that the voters accepted the ballots as proper in both substance and form; and there is not the slightest indication in the evidence that the numbering of the ballots intimidated or influenced any voter in any respect, or prevented any one from voting. Indeed, it seems that both the voters and the election officers regarded the ballots in question the same as ballots have always been regarded at other elections. This arose from the fact that we have a section similar to those in force in many states, which provides that there shall be stubs attached to all official ballots, which shall be numbered consecutively from 1 upward; and on this stub one of the election judges must write the initials of his name before handing the ballot to a voter, who then takes it to the voting booth and marks it to indicate his choice, and folds and returns the same to the judge who handed it to him. The judge then inspects the stub to see whether the ballot is the same one he handed to the voter, and if it is he removes the stub from the ballot and returns the same back to the voter, who then deposits it in the ballot box, and the stub is destroyed. No such stub was either required or attached to the ballots in question; but, in view that the letters "No. ——" were found on the back of the ballots, the election officers no doubt had in mind the general law, and they, without thinking, proceeded to number the ballots in question as aforesaid. The evidence is without dispute that those who alone were responsible for the numbering of the ballots acted honestly; and, further, that the voters received the ballots and voted them as the official ballots, believing them to be proper in form, and paid no attention to

the fact that by comparing the numbers of the ballots with the numbers on the poll book set opposite the names of the voters it could be ascertained how a particular voter cast his vote. Neither is it made to appear that any voter was aware of the fact that such comparison could be made until after the election.

Were the ballots void, or did the use thereof vitiate the election? These very questions very recently came before the Supreme Court of Idaho and are passed on in the case of *McGrane v. County of Nez Perce*, 18 Idaho, 714, 112 Pac. 312, 32 L. R. A. (N. S.) 730, Ann. Cas. 1912A, 165. The Idaho Constitution provides that "all elections by the people must be by ballot. An absolute secret ballot is hereby guaranteed, and it shall be the duty of the legislature to enact such laws as shall carry this section into effect." At an election held in one of the counties of Idaho to determine the question whether intoxicating liquors shall be sold or not, ballots were used which were consecutively numbered, both on the face of the stub and the face of the ballot, so that it could be ascertained by comparing the ballots with the poll book who voted a particular ballot, and how such voter voted, just as in the case at bar. The Supreme Court of Idaho in effect held that, while such a ballot was not the secret ballot contemplated by the Constitution, yet, in view of the fact that the numbers were placed on the ballots innocently, without any purpose on the part of any one to intimidate any one, or to ascertain how the voters voted upon the question, and in view that the voters cast such ballots in good faith, believing them to be legal and in due form, without being influenced in any way in their votes by the use of such ballots, the election was valid. This decision is assailed by appellants' counsel as being unsound. We have carefully read the decision; and we feel constrained to say that, in our judgment, the reasoning of Mr. Justice Ailshie is sound, and that the conclusions reached by him are supported by the great weight of authority. The more recent decisions with respect to the legal effect of casting numbered ballots, from which it can be ascertained who voted them, and how such

voters voted, are reviewed by Mr. Justice Ailshie; and we
shall do no more than to refer to some of the cases reviewed
by him.

It is contended that Mr. Justice Ailshie lays too much
stress upon the claim that courts should not interfere with
the will of the people as expressed through the ballot. In this
regard, it is argued that, unless an election is in all respects
called and conducted in accordance with both constitutional
and statutory provisions, then, in the eye of the law,
there is no expression of the people's will. In other
words, if the will of the people is sought to be ex-
pressed by the means of an election, such election must be
conducted in accordance with the forms of law. We may
well concede this claim in the abstract; but the law must,
nevertheless, be given a rational application. For instance,
the right to a secret ballot was intended as a shield to protect
the voters from being unduly influenced or interfered with
in the exercise of the franchise, and the community from
having incompetent and dishonest men elected to office by
means of fraud or intimidation. The guaranty of a secret
ballot was, however, not intended to be used as a sword by
those who may be defeated or disappointed at an election, by
being permitted to take advantage of irregularities, and by
reason thereof have the election declared invalid and the
result thereby obtained held for naught.

Where an election takes place which is held or conducted
in violation of some express constitutional or statutory pro-
vision, or where, through some act of commission or omission
prohibited by law on the part of the voters, or some
of them, the result of an election is affected, or if it
be shown that fraud, intimidation, or other illegal
methods were practiced, then an election cannot stand. In
this case, it is not claimed that any of the foregoing condi-
tions prevailed. All that is claimed is that, by reason of the
numbering of the ballots, it was made possible to destroy
their secrecy. Is this, when standing alone and under the
circumstances detailed, sufficient to authorize a court to de-

clare an election invalid, because such ballots were used? We think not.

In the first place, as clearly pointed out by Mr. Justice Ailshie in the Idaho case, perfect secrecy in case printed ballots are used is neither contemplated by nor attainable under the law. It is well known that under the Australian ballot law a blank column or ticket must be left on the ballot, on which the voter may write the name of any person of his choice for any office for which he is permitted to vote, in case he does not desire to vote for the persons named on any party ticket which is placed on the ballot. He may not only thus vote the name of some other person to fill any office on the ballot, but he may write his own name, and thus vote for himself. What one voter may do, any number of voters may do. Any person, therefore, who is familiar with the handwriting of such a voter or voters may thus, by such writing, identify the ballot or ballots cast by him or them, as the case may be, and in doing so may ascertain for whom the vote or votes were cast. What is true of one voter who writes names upon the blank ticket may be true of all who may do so. It may also be that the judges of election are well acquainted with the handwritng of many of the voters in a voting district; and they may thus tell how some, if not all, of their neighbors voted. In this regard, what is true with respect to the election judges is also true of those who, under the law, are permitted to be present at the opening of the ballot boxes and the counting of the ballots. If comparisons are permissible, therefore, why could not the handwriting on the ballots be compared with other writings of the persons, which are known to be genuine? If it be said that such comparisons are not permitted by law, then it must also be said that no comparisons are permitted by the same law. It may also be said that, perhaps, no law or printed ballots can be devised upon which the voter may not write the name of the person or persons of his choice for any office. Any law which prevented the voter from expressing his choice of persons for any office would not give the free and untrammeled expression which is contemplated by the mod-

ern election laws. We do not say that a law which absolutely prohibited any voter from writing any name or names on any ballot would be void; but what we do say is that we know of no such law, and certainly no such law is in force in this state, and we think such a law is not contemplated by our constitutional provision referred to. Only approximate secrecy can be attained in any event. Why should the innocent numbering of ballots, from which no more can be ascertained than may ordinarily be ascertained from any number of ballots used at a general election, where the names of persons are written thereon, vitiate the election?

If the mere use of ballots, the secrecy of which is or may be destroyed, vitiates an election, then it is immaterial whether a large or a small number of such ballots were used. We would thus have to declare an election void if it were shown that ballots were voted, the secrecy of which was destroyed, whether the number was large or small. Such, in our judgment, is not the law. We think the true doctrine is that, although it be shown that ballots which were not secret were used and voted, yet, unless the contestant goes farther and shows that the result of the election was in fact affected by voting such ballots, he cannot prevail in contesting an election so held. The electors cannot be disfranchised by declaring their votes void for an act or omission of some election officer, or some one else, unless such act or omission violates some express constitutional or statutory provision, or amounts to intimidation or fraud. To this effect is the great weight of authority. See, among other cases, *McGrane v. County of Nez Perce,* 18 Idaho, 714, 112 Pac. 312, 32 L. R. A. (N. S.) 730, Ann. Cas. 1912A, 165; *Farnham v. Boland,* 134 Cal. 151, 66 Pac. 200, 366; *Freshour v. Howard,* 142 Cal. 501, 77 Pac. 1101; *In re Town of Groton,* 63 Misc. Rep. 370, 118 N. Y. Supp. 417; *Hirsh v. Wood,* 148 N. Y. 142, 42 N. E. 536; *Eufaula v. Gibson,* 22 Okl. 507, 98 Pac. 565. In the case last cited, it is said:

"A voter ought not to be disfranchised and his ballot rejected where, as in this case, an election officer improperly marks or numbers it, when it is not shown when it was done, or that it was

done with the connivance, consent, or knowledge of the voter, and for the purpose of distinguishing it."

Similar, and in some instances even stronger, language is used in all of the cases we have cited above. In all of those cases, numbered or marked ballots were cast by at least some, if not all, of the voters; but, notwithstanding that fact, it was held that the ballots were properly counted, and that the elections at which they were cast were valid.

In principle, the case of *Ritchie v. Richards,* 14 Utah, 345, 47 Pac. 670, is not distinguishable from the case at bar. In that case, the election was assailed upon the ground that numbered ballots were used and counted, the secrecy of which was destroyed; and hence such ballots were illegal. In other words, it was contended that, because such ballots were supplied to the voters and were voted at the election, therefore the election was void. While the majority of the court held that the ballots were illegal because of being numbered, yet the effect of the holding also is that the use thereof did not vitiate the election nor affect the result thereof, as shown by the return of the ballots that were cast. We are of the opinion, therefore, that, while the numbering of the ballots in question destroyed their secrecy, and for that reason were not such as the constitutional provision contemplates, and that the use of such ballots must be condemned, yet, in view that said ballots were numbered and cast under the circumstances hereinbefore stated, they were properly counted; and the election at which they were cast was also properly upheld by the district court.

Neither did the court err in refusing to reject the marked ballots, upon the ground that the numbers placed thereon constituted distinguishing marks, within the purview of our statute. We have a special statute (Comp. Laws 7 1907, section 848) which defines when and under what circumstances ballots that have been cast by the voters must be counted or rejected. After providing how the ballots must be marked by the voters in expressing their choice, and that ballots, not marked as indicated, must be rejected, the statute provides as follows:

"No ballot furnished by the proper officer shall be rejected for any error in stamping or writing the indorsements thereon by the officers charged with such duties, nor because of any error on the part of the officer charged with such duty in delivering the wrong ballots at any polling place, but any ballot delivered by the proper official to any voter shall, if properly marked by the voter, be counted as cast for all candidates for whom the voter had the right to vote, and for whom he has voted."

These provisions are in strict harmony with the doctrine announced by the courts that voters are not to be disfranchised, nor is the result, as the same is expressed by their ballots, when legally marked and cast, to be set aside, except for some substantial reason which affected the fairness or legality of the election. The numbers placed on the backs of the ballots in question did not constitute distinguishing marks, in view that they were not placed there by the voters, or with their knowledge, connivance, or consent; and hence the voters could not have been intimidated or influenced thereby, nor could they have intended the numbers as distinguishing marks. Moreover, the ballots in question here were the official ballots, and were, by the proper election officers, tendered to the voters as such. The voters therefore had the right to receive them and accept them as proper ballots to be cast by them.

In conclusion, we desire to state that we have carefully examined the cases cited and relied on by appellants. All of the cases cited by counsel, except, perhaps, two, to wit, *Sweeney v. Hjul,* 23 Nev. 409, 48 Pac. 1036, and *Treat v. Morris,* 25 S. D. 615, 127 N. W. 554, are easily distinguishable, both in fact and law, from the case at bar. In the case of *Sweeney v. Hjul, supra,* a case from the same court, namely, *Lynip v. Buckner,* 22 Nev. 426, 41 Pac. 762, 30 L. R. A. 354, is referred to. In the latter case, the court held in accordance with the views herein expressed; while in *Sweeney v. Hjul,* apparently a different conclusion was reached. This, however, is more apparent than real, because

the court seeks to distinguish *Sweeney v. Hjul* from the case of *Lynip v. Buckner, supra.*

We are of the opinion that the ruling of the district court was right, and that the judgment should be affirmed. Such is the order. Respondents to recover costs.

McCARTY, J., concurs.  STRAUP, J., concurs in the result.