# REPORTS OF CASES

### DETERMINED IN

# THE SUPREME COURT

#### OF THE

# STATE OF NEVADA

## JULY TERM, 1912
### (MONTH OF SEPTEMBER)

[No. 1949]

STATE OF NEVADA, EX REL. GEORGE SPRING-MEYER, RELATOR, v. CLEVELAND H. BAKER, RESPONDENT.

[No. 1950]

STATE OF NEVADA, EX REL. JOHN W. LEGATE, RELATOR, v. JOE JOSEPHS, RESPONDENT.

1. QUO WARRANTO—ELECTION CONTESTS—BALLOTS AND ELECTION RETURNS—ADMISSIBILITY IN EVIDENCE.

 Rev. Laws, 5409, providing that a public record in the custody of a public officer in a public office may be admitted in evidence by the certificate of the custodian that it is genuine, affects the admissibility of the specified character of evidence, but not the method of the production thereof in court, and the supreme court in *quo warranto* involving an election contest has no authority to direct the county clerk of a county to certify to the court the ballots and election returns of the precincts of the county for the election.

2. ELECTIONS — BALLOT BOX — CERTIFICATE OF COUNTY CLERK — SUFFICIENCY.

 A certificate of the county clerk of a county attached to a ballot box of a precinct in the county, which recites that he certifies that to the best of his knowledge and belief there are within the ballot box, so inclosed that it cannot be opened without destroying the certificate, the ballots cast at an election and the election returns, and that to the best of his knowledge and belief the ballots and returns are genuine, does

not comply with the statutory requirements because it fails to show that the box and its contents were in his custody and in his office, or that the box and its contents are the genuine and authentic election records and documents of the precinct, and the ballot box is inadmissible in an election contest.

3. ELECTIONS — BALLOT BOX — CERTIFICATE OF COUNTY CLERK — SUFFICIENCY.

Rev. Laws, 1795, providing for the deposit of ballots and election returns in the office of the clerk of county commissioners, and that they shall not be subject to the inspection of any one except in cases of contested elections, and then only by the judge or body before whom the election is contested, is not repealed by a subsequent statute embodied in section 5409, providing that a public record in a public office may be admitted in evidence by the certificate of the custodian, and ballots must remain in the custody fixed by law except when their removal is authorized by some court, and ballots are not admissible in evidence in an election contest under the certificate of the clerk when they have been out of his official custody subsequent to the making of the certificate, at least in the absence of a proper foundation for their admission having been laid.

4. ELECTIONS — BALLOTS — CERTIFICATE OF CUSTODIAN OF PUBLIC RECORD—STATUTES—"PUBLIC DOCUMENTS."

Under Rev. Laws, 1795, providing for the deposit of ballots and election returns in the office of the clerk of county commissioners, and declaring that ballots so deposited shall not be subject to the inspection of any one except in cases of contested elections, and then only by the judge or body before whom the election is contested, ballots and election returns duly deposited are public documents within section 5409, providing that a public document in the custody of a public officer may be admitted in evidence by the certificate of the custodian thereof that it is genuine and authentic.

ORIGINAL PROCEEDING in *quo warranto* to determine the legality of the election of respondents to the offices of Attorney-General and Clerk of the Supreme Court, respectively.

Question as to the admissibility of the election returns upon the certificate of the county clerk. For decision upon the merits, see same case, *post.*

The facts sufficiently appear in the opinion.

*George Springmeyer,* for Relators:

Section 467 of the new civil practice act (Rev. Laws, 5409) is plain and specific. From time immemorial judicial

records have been admissible by the certificate and seal of the legal custodian. So, too, have many other public or official or semiofficial documents been admissible in the same way. (Wigmore, secs. 1645, 1675, 1676.)

To admit election records upon certificate and seal is no extension of the law, is not unique nor an innovation. The principle is the same throughout, the theory being that official statements are entitled to a certain sanctity and consideration, just as are dying declarations and other exceptions to the hearsay rule. (Wigmore, secs. 1631–1635, 1675, 2161, 2534.)

While in transit the records are in *custodia legis*, and, accordingly, it is assumed that they will be safely kept.

The legislature may deprive of the right of cross-examination and shift the burden of proof. There are many exceptions to the right. (Wigmore, sec. 1392.)

Respondent's own authorities disprove his contention that election returns are not public records or documents. See, also, Black's Law Dict., 2d ed. 386.

*Cleveland H. Baker* and *James R. Judge*, for Respondents:

The legislature, in attempting to make provision for the admission in evidence of "a public record or document, in the custody of a public officer of this state, in a public office," had in view that particular class of public records and documents referred to and recognized as such by legislatures, courts and such other deliberative bodies, as well as authors, law writers and attorneys, since they have a well-defined meaning and one that is well understood and recognized by the courts.

Are election ballots and election records public records or public documents? If so, when, where or in what proceeding were they so adjudicated? No such ruling has been made by any court of last resort, for the good and sufficient reason that the law relating to elections and the provisions for the custody and safe-keeping of the ballots after they have been delivered to the respective county clerks, negatives absolutely the idea that

they are public records, their inspection or examination being prohibited, save in cases of contests or recounts; their lodgment with the county clerks is but temporary, and to give the public access to them would be to deprive the voters of the benefits intended to be conferred upon them by the enactment of the Australian ballot law.

To so hold would of necessity result in depriving respondent of the right to show, if such fact exists, that the ballots were not, while in the custody of the clerk, kept in a secure and proper manner as required and contemplated by the election laws; again, the clerk executing the certificate was not, as has been shown in several instances in the case at bar, the clerk to whom the ballots were delivered by the election officers, some of the clerks having qualified in the first instance and assumed the duties of the office on the first of the present year, while no proof as to their being the same ballots delivered to the former clerk is required.    Here again the certificate could not extend back of the date upon which the ballots and election returns were delivered to them; in such case, the respondent, if the certificate be all controlling, as claimed by relator, is without the right to show, if such be the fact, that the ballots and returns are not in the same condition as when originally delivered to the clerk having charge of the office when the election was held, and that they were not properly kept or preserved as directed by the election law.

By the Court, SWEENEY, C. J., dissenting in part:

[1] Counsel for relator. applied to the court for an order directing the county clerk of Storey County to certify to this court the ballots and other election returns of the several precincts of that county for the general election held in 1910.    This application was made upon the following provision of section 467 of the new practice act (Rev. Laws, 5409): "A public record or document in the custody of a public officer of this state, in a public office, may be proved and admitted in evidence in any court by the certificate of the legal keeper or custodian thereof

that it is genuine and authentic, and by his seal, if there be one annexed." This motion was denied for the reason that there was no provision of law for such an order; the provision of the section in question affecting the admissibility of a certain character of evidence and not the method of its production in court. Subsequently, relator offered in evidence the ballot box of one of the precincts of Lyon County, to which was attached the certificate of the clerk in the following form: "State of Nevada, County of Lyon—ss.: I, Chas. A. McLeod, county clerk of Lyon County, State of Nevada, do hereby certify that to the best of my knowledge and belief within this receptacle, which is so inclosed that it cannot be opened without destroying this certificate, there are contained all the election ballots cast in Sutro precinct, Lyon County, State of Nevada, at the general election held on November 8, 1910, and all the election returns, pollbooks and tally lists there used. And I do hereby certify that to the best of my knowledge and belief the said election ballots, returns, pollbooks and tally lists are genuine and authentic. In witness whereof, I have hereunto set my hand and affixed my official seal, at my office in said county, this 12th day of February, A. D. 1912. [Signed] Chas. McLeod, County Clerk of Lyon County, State of Nevada. [Seal.]" Objection to the offer was made by respondent upon several grounds. It was agreed that the offer and objection should stand for the purpose of a ruling and that the contest should proceed as it had theretofore been conducted until a ruling was made upon the offer.

[2] I think that the certificate attached to the ballot box offered in evidence fails to meet the requisites of the statute and is insufficient to authorize its admission in evidence. It fails to show that the box and its contents were in the custody of the officer and in his office, or that the box and its contents are the genuine and authentic election records and documents of the precinct in question. The certificate must meet the requirements of the statute before the records or documents are admissible as

originals. The objection under consideration must be sustained upon the ground of insufficiency of the certificate.

In order, however, that the question desired to be presented by relator may be passed upon fully, in view of the fact that if the contest proceeds counsel for relator could present the same question by amending the certificate so as to comply with the provisions of the statute in so far as raising the point he desires passed upon, we will assume that a certificate meeting all of the contentions of counsel for relator was before us for consideration and give to the statute in question a construction upon the point urged by relator.

A careful reading and consideration of the election laws pertaining to the care, custody, and control of ballots must be given in connection with the section of the statute singled out by relator to support his contention.

The method of carrying on elections and election contests, the casting, care, custody, and preservation of the ballot, and in fact the whole subject of elections, have received as much time and consideration of our legislature as possibly any other one subject which has come before it for consideration. The issue of "Purity of Elections" and the desire to protect by law, in so far as legislation may do, and to give an untrammeled expression of the people's will, free from all taint of fraud and corruption, has been as keenly urged in Nevada as in any state in the Union, and in consequence our legislature has attempted to not only provide for laws insuring an honest election, but to safeguard the ballot, which, when cast, is expressive not only of the popular will, but is the title proper to the office of the officer-elect.

[3] To protect this title our legislature, among other provisions of our election laws, by section 1795 of the Revised Laws, provides how the inspectors of election, after the ballots have been cast, shall file and make their returns, the manner of delivery and with whom the ballots shall be deposited and who shall be their custodian, and among other provisions in said section it is expressly provided: "After the ballots have been cast, counted

and deposited * * * that the ballots so deposited with the board of county commissioners *shall not be subject to the inspection of anyone, except in cases of contested elections, and then only by the judge, body or board before whom such election is being contested."* Having so provided, can it be said that the legislature intended to imply that ballots are "public records or documents" in the sense that they may be sent without the especial custody of the officer in charge of the same in violation of this particular statute, and, if so, forwarded to the court before which an election contest is being considered, and was it meant to imply that ballots. should be admitted in evidence without being produced by the custodian who is especially enjoined by law to retain them in his keeping until they shall be inspected by the "judge, body or board before whom said election is being contested"? I do not so believe. Neither do I believe that a ballot can be considered a "public record or document" in the sense and purpose contended for by relator under section 5409, *supra.*

The term "document" has a very broad significance, and has very properly been defined in Cyc., as follows: "That which conveys information; that which furnishes evidence, or proof; a written or printed instrument; an instrument upon which is recorded, by means of letters, figures, or marks, matter expressed and described upon it by marks capable of being read; any matter expressed or described upon any substance by means of letters, figures, or marks, or by more than one of these means, intended to be used, or which may be used, for the purpose of recording that matter; anything bearing a legible or significant inscription or legend; anything that may be read or communicating an idea (including thus a tombstone, a seal, a coin, a signboard, etc., as well as paper writings); all material substances on which the thoughts of men are represented by writing or any other species of conventional mark or symbol." (14 Cyc. 824; Words and Phrases, vol. 3, 2153; Words and Phrases, vol. 6, 5786, 5818.) But to become or to be entitled to

be considered a "public document or record," in the sense our statute contemplates, it should meet the test which the plain, broad, ordinary conception of the word "public" implies, to wit, subject to open and public inspection and review. Our statute provides that ballots when deposited shall not only not be subject to "public" inspection, but expressly provides for their secretive custody and subject to the inspection of no one save the judges or others conducting an election contest. It is proper to observe, in this connection, that our legislature has never attempted to withhold from the inspection of the public any other "public document or record," as generally understood by the public, and I do not believe that· they ever intended ballots to be considered "public documents or records" for the purpose sought by relator.

No authority has been cited to this court, nor have I· been able to find any, wherein a ballot or ballot box was ever considered a "public document or record," for the purpose contended for by relator, and in view of the fact that ballots are not public in the sense that they can be viewed by every one or as "public documents or records" imply they may be and are subject to the inspection of none save persons expressly designated by statute, and compelled to be kept in secret file and custody, gives me reason to believe that no such authority can be found to sustain relator's contention that they are. The ballots of a state electorate are in effect the title to the offices of those selected by the people, and are zealously and jealously guarded by law, and as a matter of public policy are rightfully surrounded with its every safeguard against loss or fraud. Nor do I believe that the custodians of the ballots prescribed by our statute would be authorized or warranted,. upon the stipulation of counsel in a contest case, to allow the ballots out of their custody, or to deliver them into the custody of others than as designated by law. The ballots not only represent the title ·to the office involved in the contest, but are the title of all the other offices, and these officers as well as the public have rights which cannot be jeopardized or stipulated away contrary

to the statute for the convenience or the possible saving of some expense of the contesting parties in a particular contest.

Instancing the legislative intent to preserve and conserve the evidence on which an officer-elect may rely, when the title to his office is questioned, the fallacy of the position of counsel for relator may be more apparent when we illustrate that if we were to hold with relator that upon the mere placing of a certificate upon the ballot box, say by the county clerk of White Pine County at Ely, certifying that it contained the ballots of White Pine County, and upon their arrival in Carson City they were offered and would be by mere virtue of a certificate admissible in evidence, the court would have nothing before it save the certificate of the clerk at Ely certifying up to the *time* when he put the ballots out of his possession that the ballot box contained the will of the voters of White Pine County. From the *time* the ballot box would leave the county clerk of White Pine County, in whose care or custody would the ballots be until they arrived in Carson City and placed before this tribunal, before which the contest is being prosecuted? If the county clerk of White Pine County could turn them over to Wells-Fargo, he could turn them over to any corporation or person he saw fit, and send them by stage, horseback, or otherwise, as there is no statutory provision provided for the manner of sending them or for their care, if the law providing for their safekeeping, custody, and production before tribunals before which an election contest is pending is not to be considered and if the construction counsel for relator places upon the statute were allowed to prevail. After the ballots would arrive here, to admit them in evidence upon the certificate of the clerk as made in White Pine County would leave a gap of *time* and *space* wherein said ballots would be in the custody of another, expressly in conflict with section 1795, *supra,* and accordingly could not be admitted in evidence without a recertification of the county clerk that they were the same ballots to which he had formerly certified

to in the city of Ely, after the proper foundation for their admission has been laid. That the legislature never intended that the custody and preservation of the ballots should be so lightly treated is apparent to any one reading the full intent and spirit of our election laws which must be read in connection with the statute in question. To hold otherwise, I believe, would do violence to every safeguard that has been so zealously and jealously thrown about the casting, care, preservation, and secret custody of the ballots, and place a construction on the statute in question not in consonance with our legislation affecting elections and election contests and not in harmony with the well-settled rule of construction that a general law will not repeal a special law, relating to a particular subject, by implication, where it is manifest that the legislature did not so intend.

The application for an order directing the county clerks of the various counties to certify to this court the various ballots and election returns of the several precincts is denied, for the reason that there is no provision for such an order to be made, and the further application of relator to offer in evidence any ballots which may arrive without being in the care and custody of the officer designated by law will be denied until a proper foundation is laid for the introduction of the same as prescribed by the rules of evidence and by law.

Let such be the orders.

NORCROSS, J., concurring:

I concur in the order denying the application of counsel for an order directing the county clerk of Storey County to certify to this court the ballots and other election returns of the several precincts of that county, for the reasons heretofore given and stated in the opinion of the chief justice.

I also concur in the order sustaining the objection of the offer of the ballot box and contents of one of the precincts of Lyon County, for the reasons stated in the opinion of the chief justice. I do not, however, concur

in the views expressed in the opinion of the chief justice
that ballots and other election returns may not under
any circumstances be admitted in evidence upon the
proper certificate of the county clerk. Had the offer of
the Lyon County precinct been in proper form, I think
the same would have been admissible.

The ballot box and its contents, together with the other
election returns, of the Lyon County precinct were pro-
duced in court by the clerk of that county under regular
subpena.

[4] The language of the statute is plain and unambig-
uous, and there is no room for construction so far as its
provisions are concerned. If ballots and other election
returns are public documents, then, under proper condi-
tions, they may be admitted in evidence if duly certified.
That they are public documents, I think, is without ques-
tion under the definition and authorities cited in the
opinion of the chief justice.

The argument made by counsel for respondent to the
effect that election returns ought not to be admitted in
evidence upon the mere certificate of the clerk, and that
it shifts the burden of proof, goes to the wisdom of the
statute rather than to the force and effect—a matter
with which the courts have nothing to do.

The contention of counsel for respondent, to the effect
that a county clerk has no right to permit the ballots to
be removed from his office and custody except upon a
subpena requiring them to be produced before the court
in an election contest, and that for him to certify to the
same and then to deliver them to some person or carrier
to be brought into the court, under all circumstances,
would be contrary to law and in violation of his duty as
an officer, cannot, I think, be sustained.

I think it manifest from the provisions of section 1795,
Rev. Laws, referred to in the opinion of the chief justice,
especially in view of the many other provisions of law for
safeguarding the purity of the ballot, that the legislature
intended that the ballots should remain in the custody
fixed by law, except when their removal was specifically

authorized by some court, board, or body empowered to examine the same in case of an election contest. I also think it manifest that a clerk would not be authorized to certify to the same and, without a subpena commanding their production or other authorization of the court, board, or body conducting the contest, proceed of his own volition, independent of such subpena or authorization, to send them to such court, board, or body.

Under certain circumstances, I think a court conducting a contest would be justified in permitting election ballots and returns to be certified and forwarded under prescribed conditions securing their safety, without requiring the presence of the clerk under subpena. For example, should both sides of a contest for a state office so stipulate, the fact that it was agreeable to the parties, taken in connection with the saving in expense to the litigants, might justify the court in permitting such procedure. Other situations might present themselves in which such a procedure would be appropriate. Even then, should a clerk refuse to transmit the ballots, resort would have to be had to the only lawful method of compelling their production by subpena.

Where a clerk of a distant county is required to produce the ballots under subpena, the usual and practically the only feasible method for him to bring them is to intrust them to the care of the express company. Most of the ballots introduced in this case have been so transported. As a clerk must resort to some safe agency to transport the election returns, I see no reason why a court may not prescribe such an agency as an arm of the court. Cases may arise in which there may be no objection to such procedure; convenience and the saving of great expense may commend it to all concerned.

In the present case there is strenuous objection to the production of the ballots except by the clerk personally. There does not appear to exist such a condition as, notwithstanding such objection, would warrant the court in permitting the production of the ballots in any other way.

TALBOT, J., concurring:

I concur in the order as stated in the opinions of the chief justice and Justice NORCROSS.

Whether ballots be considered public documents or not, under the adverse contention of counsel, would seem to be immaterial, if effect be given to the language of section 1795. If it be admitted that they are public documents, and are admissible in evidence on the certificate of the legal keeper under section 5409 if he appears in court with them in a pending contest and they have been in proper custody until so presented as provided by statute, and I believe they are because they pertain to public elections and public offices, nevertheless, when they are not presented by the proper official custodian, the same presumptions regarding their validity, and that there has been no opportunity for interested persons to tamper with them, and for warranting their admission in evidence, do not prevail.

It is ordinarily requisite for the admission of ballots that it be shown that they have been kept in proper official custody. While they remain in the possession of the officers, as directed by law, it is presumed that the officers do their duty and that the ballots are properly preserved; but for apparent reasons the same presumptions do not attach when the ballots are given over to the possession of persons who are not under official oath or obligation, or who may have a direct or important interest in a contest for a public office depending upon the ballots. Although many contestants possess such a high degree of honor that they would not change the ballots if the custody were given over to them, other contestants might be so void of principle as to change enough ballots to turn the election in their favor if given the opportunity, which would result in allowing them to have the sole possession of the ballots before they are presented to the court as evidence. The law is not based on the theory that all men are honest, and since a time long prior to the adoption in this state of the Australian

ballot system, providing for secrecy in the casting of ballots by electors, we have had statutes guarding in official custody the preservation and secrecy of the ballots after they were cast, and prohibiting their inspection or custody by persons whose claim to office depended upon the ballots, or by the public or individuals other than the official custodian or tribunal hearing the contest.

Section 1795 of the Revised Laws is section 29 of the general act relating to elections, and as originally passed in 1873 (Stats. 1873, c. 171) it had the same provision which is now in force: "That the ballots so deposited with the board of county commissioners shall not be subject to the inspection of any one except in case of contested elections, and then only by the judge, body or board before whom such election is being contested." This section as orginally passed provided that the ballots and election returns should be directed to the clerk of the board of county commissioners. After an election contest for the office of county clerk, in which the election returns were overturned in favor of the incumbent by a recount of ballots which had been held in his custody, the legislature amended this section in 1879 (Stats. 1879, c. 112) by providing that if the clerk was voted for at the election the ballots and returns should be directed to certain other county officers in the order named in the statute, so that they would be deposited with an officer who was not a candidate and had no interest in the election resulting from the ballots.

It is, and long has been, the policy of the legislature to provide for the official custody of the ballots, as well as for their reception from the election officers by some county officer who is not interested as a candidate at the election. These statutory provisions were enacted to safeguard the ballots by requiring them to be in disinterested official custody and to avoid the dangers which might result from giving them over to the possession of other persons.

The rule is well settled that a later general law does not repeal an earlier special law relating to a particular sub-

ject, and I do not believe that the legislature by passing section 5409, which provides that public documents may be admitted in evidence by the certificate of the legal keeper, had in mind or intended to repeal the clear provisions providing for the official and secret custody of ballots, nor that the provision that a public document may be admitted in evidence by the certificate of the legal keeper was intended to repeal the provisions of section 1795 for the official keeping and secrecy of ballots, nor to authorize them to be turned over to contestants or other persons when the statute is specific in directing their official and secret keeping, and nowhere provides that they shall be turned over to contestants or individuals other than the officers specially authorized to retain them.

Whether ballots be considered public documents or not, as the law provides for their official and secret custody, and there is no authorization for turning them over to the contestants, it would seem that they are not admissible under the mere certificate of the clerk when they have been out of his official custody for a period of time after he made and attached his certificate, or at least unless evidence is supplied that they are in the same condition when presented to the court that they were when they left the custody of the clerk; and high authorities hold that they are not admissible even if such evidence is furnished, unless possibly in cases where the irregularity in their official keeping is slight. Mr. McCrary, in his work on Elections (4th ed.) at sections 471, 473, and 475, says:

"Where, as is the case in several of the states, the statute provides a mode of preserving the identical ballots cast at an election, for the purpose of being used as evidence in case of contest, such statute, and particularly those provisions which provide for the safe-keeping of such ballots, must be followed with great care. The danger that the ballots may be tampered with after the count is made known, especially if the vote is very close, is so great that no opportunity for such tampering can be permitted. Such ballots, in order to be received in

evidence, must have remained in the custody of the proper officers of the law from the time of the original official count until they are produced before the proper court or officer, and if it appear that they have been handled by unauthorized persons, or that they have been left in an exposed and improper place, they cannot be offered to overcome the official count.   *   *   *

"So much depends upon the terms of the particular statute to be construed that it is impossible to lay down a general rule applicable to all cases; but the better opinion seems to be that, if the deviation from the statutory requirements relative to the manner of preserving the ballots has been such as necessarily to expose them to the public or unauthorized persons, the court should exclude them; but if the deviations have been slight, or of such a character as not necessarily to render doubtful the identity of the ballots, the question of their identity may well go to the jury to be determined upon all the evidence.   *   *   *

"Before the ballots should be allowed in evidence to overturn the official count and return, it should appear *affirmatively* that they have been safely kept by the proper custodian of the law, that they have not been exposed to the public or handled by unauthorized persons, and that no opportunity has been given for tampering with them."

Although the law directs that the ballots be retained in the custody of the clerk, and he is not authorized to surrender them except upon subpena or order of the judge, body, or board before whom the election is being contested, yet, if he does surrender them with his certificate, such certificate can only authenticate the ballots to the time that it is made, for it is impossible for the clerk to guarantee in advance by his certificate that the ballots will be in the same condition at some time in the future after they have been in the custody of other persons that they were when he surrendered them to others.

In view of these statutes, and the construction given by the courts to similar provisions relating to the secret

official keeping of ballots, I conclude that if the ballot boxes and contents be considered as public documents, and they are offered in evidence with the certificate of the clerk from the custody of some person other than the legal keeper, they are not admissible on such certificate alone, even if admissible in certain cases if evidence of their correctness is supplied, but that they are admissible on such certificate alone if the clerk keeps them in his custody until he presents them to the court with his certificate.