[No. 1949]

## STATE OF NEVADA, EX REL. GEORGE SPRING-MEYER, RELATOR, v. CLEVELAND H. BAKER, RESPONDENT.

[No. 1950]

## STATE OF NEVADA, EX REL. JOHN W. LEGATE, RELATOR, v. JOE JOSEPHS, RESPONDENT.

1. QUO WARRANTO—ELECTION CONTESTS—JURISDICTION.
   The court has jurisdiction to allow a writ of *quo warranto* on the relation of a defeated candidate for a state office to contest the election.

2. QUO WARRANTO — CONTESTS — APPOINTMENT OF COMMISSIONER — JURISDICTION OF COURT.
   Under Comp. Laws, 3279, 3280, authorizing the court to direct a reference when necessary for the information of the court, etc., the court, in *quo warranto* to contest an election to a state office, has jurisdiction to appoint a commissioner to count the undisputed ballots and report to the court for its information the actual ballots in dispute as well as the fact and number of undisputed ballots.

3. ELECTIONS — COMPENSATION OF COMMISSIONER APPOINTED BY COURT.
   The compensation due the commissioner, appointed by the supreme court in an election contest to count the ballots which are undisputed and report the actual ballots in dispute, may be taxed as costs against the defeated party; but the court may not order relator to pay the costs in advance, though the commissioner may withhold his report until payment is made by the party calling for it, and any compensation advanced by either party to receive and use the report will be recovered as other costs from the losing party.

4. COSTS—RECOVERY—STATUTORY PROVISIONS.
   Costs are recoverable only by express statutory provisions.

5. CLERKS OF COURTS—COSTS IN SUPREME COURT—STATUTORY PROVISIONS.

The fees of the clerk of the supreme court prescribed by Comp. Laws, 2469, allowing a fee for entering any motion, rule, or order, and a fee for filing each paper, are limited to orders and motions defined by section 3586, providing that every direction of the court made or entered in writing and not included in the judgment is an order, and an application for an order is a motion, and an offer of or objection to evidence, or a ruling admitting or rejecting evidence, or the routine adjournment of the trial, is not a motion and order, and the clerk may not recover fees therefor.

6. COSTS—LIABILITY—PRIMARY LIABILITY.

Each party to an appeal or proceeding in the supreme court is primarily liable for the costs made by him, and there is no statutory authority for the charging to relator or appellant, or requiring the payment by them before judgment, of fees incurred by respondent.

7. COSTS—COSTS IN SUPREME COURT.

Where costs are incurred on both sides on appeal or original proceeding, the clerk must collect his costs in advance from the respective parties incurring them.

8. CLERKS OF COURTS—COSTS IN SUPREME COURT—FEES OF CLERK.

The clerk of the supreme court in an original proceeding must on request issue subpenas, and fees therefor will be disallowed unless the party against whom the charge is made applied for and obtained a written order for the subpenas.

9. ELECTIONS—CONTESTS—BALLOTS AS EXHIBITS.

A party to an election contest may attach all ballots in the same precinct to which he objects and have them filed as one exhibit, but the ballots of each precinct should be kept entirely separate.

10. ELECTIONS—BALLOTS—MARKING BALLOTS.

Under Rev. Laws, 1858, providing that when a voter marks more names than there are persons to be elected to office, or where it is impossible to determine his choice for any office, his vote for the office shall not be counted, a ballot containing a cross after the names of the candidates for the same office cannot be counted for either.

11. ELECTIONS—BALLOTS—MARKING BALLOTS.

Under Rev. Laws, 1852, which provides that the voter shall prepare his ballot by stamping a cross in the square, and in no other place, after the name of the person for whom he intends to vote, the cross must be in the square after the name of the candidate, and a ballot with a cross after the name of the candidate and before the square is invalid.

12. ELECTIONS—BALLOTS—MARKING BALLOTS.

Under Rev. Laws, 1852, which provides that in case of a constitutional amendment submitted the cross shall be placed after the answer which the voter desires to give, the cross in

voting for or against a constitutional amendment need not be placed in the square, and a ballot with a cross before the square and after the word "Yes" or "No" in voting on a constitutional amendment is valid, as is also a ballot in which a single cross is placed in the square.

13. ELECTIONS—BALLOTS—MARKING BALLOTS.

A ballot containing a cross placed in the square and another cross placed before the square and after the word "Yes" or "No" in voting on a constitutional amendment must be rejected because of the extra cross.

14. ELECTIONS—BALLOTS—MARKING BALLOTS.

Under Rev. Laws, 1858, providing that any ballot on which appears names or marks excepting as provided for shall not be counted, a ballot containing a cross in the square following a blank space left for filling in the name of a candidate for an office for which no candidate has been nominated, or containing the name of a candidate written by the voter, must be rejected.

15. ELECTIONS—BALLOTS—MARKING BALLOTS.

Ballots containing crosses made with lead pencil or pen, or by marking with the wrong end of the stamp, must be rejected.

16. ELECTIONS—BALLOTS—MARKING BALLOTS.

A ballot containing an erasure destroying the texture of the paper, or containing holes rubbed or torn through the paper by the voter, must be rejected.

17. ELECTIONS—BALLOTS—MARKING BALLOTS.

A ballot containing marks other than those required for voting, apparently designed for identification, or which may be readily used for that purpose, will not be counted.

18. ELECTIONS—BALLOTS—FAILURE TO TEAR OFF NUMBER.

A ballot from which the number has not been torn by the election officers is valid.

ORIGINAL PROCEEDINGS in *quo warranto* by the State, on the relation of George Springmeyer, against Cleveland H. Baker, and by the State, on the relation of J. W. Legate, against Joe Josephs, to contest elections to the offices of Attorney-General and Clerk of the Supreme Court, respectively.

**Proceeding on relation of George Springmeyer dismissed, and judgment for respondent Joe Josephs.**

The facts sufficiently appear in the opinion.

*George Springmeyer,* for Relators:

*On Demurrer:* These proceedings have been so instituted as to give the court jurisdiction. *State* v.

*Sadler*, 25 Nev. 165, is decisive of this question. See, also, *State* v. *Stewart*, 32 Mo. 379; *Toncray* v. *Bridge*, 95 Pac. 26; 32 Cyc. 1433.

The complaint states facts sufficient to constitute a cause of action. (High, Extra. Leg. Rem. 710; McCrary on Elections, 398, 405; *Kirk* v. *Rhodes*, 46 Cal. 398; *Davis* v. *State*, 75 Tex. 420, 12 S. W. 957; *Schneider* v. *Bray*, 22 Nev. 272.)

*On Costs:* A bond cannot be required of relators. Section 3583 of the Compiled Laws does not apply. See 47 Wis. 239. Only written motions may be charged for as costs. (*Blount* v. *Com.*, 120 N. C. 19, 26 S. E. 649; *Shed* v. *Ry. Co.*, 67 Mo. 687.)

*Court Commissioner:* It is clear from the order that the commissioner is merely an assistant to the court or clerk for the performance of ministerial duties of a clerical nature, and that in no sense has he judicial powers or functions.

He is not in any sense a judicial referee, chancellor, commissioner, or the like, and he is not to be compensated as such. (24 Am. & Eng. Ency. Law, 219, and authorities; 24 Cyc. 774, and authorities.)

It is submitted, therefore, that the commissioner is a mere clerical assistant to the court and that he is to be compensated in the same manner as would a clerk, bailiff, or other person appointed by the court in the absence of a statutory provision. (*In re Green*, 40 Mo. 91; *State* v. *Commissioners*, 120 N. C. 19, 26 S. E. 649, and other authorities cited in relator's brief in the clerk's matter.)

There being no statute whatever upon the subject, nor any rule of court or principle of practice from which the duty to impose the costs of the commissioner upon the parties can be inferred, it is believed that the parties litigant are not liable for them. That no statute provides that the state shall pay the compensation of the commissioner, is a matter of indifference to this court. The underlying principle, appertaining as well to a commissioner to count ballots as to other persons and things, has been announced by decisions of this court as well as by

numerous other courts. (*State* v. *Davis,* 26 Nev. 373, 68 Pac. 689; *White* v. *Hughes Co.,* 9 S. D. 12, 67 S. W. 855; *State* v. *Cunningham,* 39 Mont. 165, 101 Pac. 962; *U. S.* v. *Swift,* 139 Fed. 225; *Stevenson* v. *Milwaukee Co.,* 140 Wis. 14, 121 N. W. 654.)

Not one of the cases cited, nor any other, put the expense upon the litigants unless there was an express statutory provision. It should not be forgotten that the state, rather than the litigants, is benefited by the work of the commissioner, for through his appointment the state is enabled to have the court attend to other duties, while the litigants are indifferent whether the commissioner or anyone else does the administrative work.

*Cleveland H. Baker, Key Pittman,* and *James R. Judge,* for Respondents:

*On Demurrer:* The legislature, in section 3415 of the Compiled Laws, imposed on the attorney-general the duty of bringing the action therein provided for, whenever he has reason to believe the cause therefor named in the statute exists, or when he is directed so to do by the governor.

The designation by the legislature of the persons or officers, both of them being officers and members of the executive department of the state government, whose duty it shall be to determine whether, in the first instance, such office or franchise has been usurped, intruded into, or is unlawfully held by any person, would seem to indicate quite clearly an intention on the part of the legislature to impose upon the officers named the duty and the right to determine that question. Nothing contained in the statute, we believe, can be construed authorizing or intended to authorize a grant or imposition of that duty upon the judicial department of the state government, or upon any court thereof. (*State R. R. Commission* v. *People,* 98 Pac. 7; *West* v. *Martin,* 92 Pac. 334; *Gray* v. *Hawes,* 8 Cal. 562.)

Election contests are, in many of the states, purely statutory, and in the absence of such statute there can be

no such contest. (*State, ex rel. Francis,* v. *Dillon,* 87 Mo. 487; *State, ex rel. Elkin,* 130 Mo. 90; *Pearson* v. *Alverson,* 49 South. 756.)

The determination of election contests is a judicial function only so far as authorized by statute. (*Taxpayers* v. *Kelly,* 49 La. Ann. 1039; *Reynolds Constr. Co.* v. *Police Jury,* 44 La. Ann. 863.)

A statutory mode of contesting elections is in every sense a special proceeding, and is subject to the well-settled rule that the tribunal exercising jurisdiction does not proceed according to the course of common law, but must resort to the statute alone to ascertain its power and mode of procedure. (*Dorsey* v. *Barry,* 24 Cal. 449; *Linegar* v. *Rittenhouse,* 94 Ill. 208; *Garrard* v. *Gallagher,* 11 Nev. 382.)

*On Costs:* The fees charged by the clerk are authorized by the statute. (Comp. Laws, 2469, 3586.)

It is respectfully submitted, on behalf of the clerk, that in the course of the hearing of each cause before the court it is made the duty of the clerk, under the provision of the statute above quoted, to note in his minutes each and every motion made by counsel in the case, whether the same be oral or in writing, as well as the ruling of the court thereon.

The history of the conduct of the case, as noted in the minutes of the clerk, is not an idle ceremony on the part of the clerk, but is required by the statute, and the minutes so noted, frequently become of the utmost importance where disputes arise, as is frequently the case, concerning motions, orders, rulings by the court, exceptions made by counsel in such matters; or where any dispute or uncertainty arises concerning such matters, the court invariably looks to the clerk's minutes for its information and guidance as to what occurred or was done, and the legislature has provided, and justly so, that litigants shall pay the clerk for the services which he has performed at their request.

*Court Commissioner:* There is not in the constitution of this state, nor in any statute of the state relating to the

jurisdiction and powers of the supreme court, so far as we can ascertain, any provision by the court for the payment of any officer or clerk employed by, attached to, or connected in any manner with said court, except those enumerated in the statute, of which this commissioner is not one.

It is not claimed or contended for, we believe, that any appropriation for the payment of the expenses of the commissioner has been made or authorized by the legislature, and without such authority we are unable to see where there is any authority for the payment, in the face of the express prohibition of the constitution of Nevada (article 4, sec. 19): "No money shall be drawn from the treasury but in consequence of appropriations made by law."

The court having made the appointment at the suggestion and request of relators, the expense should be paid by them, and, if deemed a proper charge to be inserted in the costs bill at the conclusion of the contests, it should be taxed and made a part of such judgment as may be rendered in favor of the prevailing parties, if they have paid the same in the first instance.

*Per Curiam:*

Relator J. W. Legate and Joe Josephs, respondent, were opposing candidates for the office of clerk of the supreme court at the general election in 1910. On the face of the returns respondent had a majority of 11 votes. This contest was brought on the 3d day of January, 1911. At the same time a contest for the office of attorney-general of the state was instituted on the relation of George Springmeyer against Cleveland H. Baker, who on the face of the returns had a majority of 65 votes over the relator Springmeyer. Both relators were represented by the same counsel as were both respondents, and stipulated that their causes should be consolidated and treated jointly, in so far as the interposition of objections and the rulings of the court and other matters pertaining to the conduct of the trial might be concerned.

[1] Respondents first appeared protesting against the information filed by relator and interposed a demurrer questioning the authority of the court in allowing the writ of *quo warranto*, asserting that "the court has no jurisdiction over the subject-matter of said proceeding, in that such proceeding can only be instituted in the name of the state on relation of and by the attorney-general of the state, and cannot be instituted in the name of the state on the relation of a private individual without the intervention of the attorney-general."

The court after due consideration of the contention of relator found it to be without merit (*McMillan* v. *Sadler*, 25 Nev. 165, 83 Am. St. Rep. 573), and on January 5, 1911, made an order allowing the proceeding in *quo warranto*.

[2, 3] On the 31st day of May, 1911, a commissioner was appointed to assist the court in opening, examining, and classifying the ballots. Counsel for respondents questioned the authority of the court to make the appointment of a commissioner, which was overruled by the court in the following opinion delivered from the bench:

"At the beginning of the contest in the above-entitled cause, after a demurrer and other motions and objections were overruled, and it appearing that in this contest an examination of some 25,000 ballots would probably be necessary, and it further appearing that in all probability approximately seventy-five per cent of said ballots would be free from objection of either of the parties to this contest, and the court being occupied with a heavy calendar of causes and other important official work, the court, in order to save several months of its time, believing it to be in the interest of the state that the time of the court should be consumed in other matters before them rather than in the examination of and passing upon ballots undisputed, under its authority made the following order appointing a commissioner: 'The court heretofore having signified their intention of appointing a commissioner to take charge of the counting of the ballots and report to the court any and all irregularities

appertaining to the same, and to report to the court
any and all objections during the trial of the above-
entitled cases, it is ordered by the court that George L.
Sanford be, and he is hereby, appointed commissioner
in the above-entitled cases. As such commissioner, he is
empowered to count all the ballots offered in evidence,
to number in indelible pencil, and lay aside for each pre-
cinct, all ballots not clearly regular to which objection is
interposed; to report to the court the number of ballots
for each party to each proceeding to which there is no
objection; to present to the court all the ballots to which
objection is made; and to carefully preserve in the cus-
tody of the court, without change, otherwise than as
marked for identification, all ballots which are offered in
evidence.'

"The authority of the court to make this appointment
is questioned by the respondents herein. We have no
question whatever of our authority to make such appoint-
ment. It is contended by the relators that we have the
inherent power to make such appointment; but, be that
as it may, it is unnecessary for us to pass upon this ques-
tion for the reason that we find express statutory author-
ity to have made this appointment under sections 3279
and 3280 of the Compiled Laws of Nevada, which read:

"'A reference may be ordered upon the agreement of
the parties, filed with the clerk, entered in the minutes:
First, to try any or all of the issues in an action or pro-
ceeding whether of fact or law, and to report a judgment
thereon. Second, to ascertain a fact necessary to enable
the court to proceed and determine the case.

"'When the parties do not consent, the court may upon
the application of either, or of its own motion, direct a
reference in the following cases: First, when the trial
of an issue of facts requires the examination of a long
account on either side; in which case the referees may
be directed to hear and decide the whole issue, or report
upon any specific question of fact involved therein.
Second, when the taking of an account is necessary for
the information of the court before judgment, or for

carrying a judgment or order into effect. Third, when a question of fact, other than upon the pleadings, arises upon motion or otherwise in any stage of the action; or, fourth, when it is necessary for the information of the court in a special proceeding.'

"Under the authority of the above provisions the court has the unquestioned authority, without consuming its time, to appoint a commissioner to take a count of the ballots which are undisputed and to have him report to the court for its information the actual ballots in dispute as well as the fact and number of undisputed ballots.

"As to how and by whom the commissioner appointed is to be paid, we are of the opinion that such compensation as may be due him for his services rendered is to be taxed as costs against the losing party to the contest.

"As to the authority of this court to order relators to pay in advance such costs, as is suggested by counsel for respondents, we find no such authority. As we have held, *supra*, that costs were not recoverable at common law, and a party is liable for them only when their payment is required by express statutory provision, it follows that, in the imposition of costs on either party, the court must find some authority, and as there is no authority to be found warranting the court, in a proceeding of this character, to impose costs in advance of a hearing of the cause, or to tax them against one party, or the other, until a judgment carrying costs is awarded, we are of the opinion that the costs are to be taxed against the losing party. The commissioner or referee appointed by the court is, however, privileged, and it is his lawful right to withhold his report until such payment, as he may be entitled to and awarded by the court, is paid by the party calling for his report, to be introduced as evidence or used in the trial of the cause before the court, and the court will not order the referee to deliver said report to the parties demanding it, or file the same, before his compensation is paid by the party desiring it, for the reason it would have no such authority.

"The Court of Appeals of New York, in the case of *Geib* v. *Topping,* passed upon the point adversely to the contentions of respondents that relators could be compelled to pay the fees of the referee in advance, but also held that the referee was not bound to part with his report without the payment of his legal fees. (*Geib* v. *Topping,* 83 N. Y. 46.)   The Supreme Court of Wisconsin, in the case of *King* v. *Whiton,* also held adversely to respondents' contention that the court had the authority to order relators to pay the fees of the referee in advance, but sustained the position that the referee was entitled to hold his report and demand his fees in advance before the same could be filed or used as evidence on the trial of the cause. (*King* v. *Whiton,* 15 Wis. 690.)  For other cases in point, see *Cummins* v. *Robinson,* 2 Okl. 494, 37 Pac. 1064; *Fisher* v. *Raab,* 81 N. Y. 235.   In support of the authority of this court to impose the costs upon the losing party, see *Schawacker* v. *McLaughlin,* 139 Mo. 333, 40 S. W. 935; *In re City of New Orleans,* 19 La. Ann. 382; *Lobdell* v. *Bushnell,* 27 La. Ann 395; 34 Cyc. 893, and cases therein cited.

"Such compensation as may be allowed for the services rendered by the commissioner will therefore be taxed finally against the losing party.   Should, however, any fees or compensation, which the commissioner might be entitled to, be advanced by either party for the purpose of receiving and using the report of the commissioner in the trial of the cause, such party so advancing the same, if he prevail in the action, will be entitled to recover the same as other costs from the losing party."

During the proceedings there was presented for consideration of the court the legality of certain clerk's fees charged against relators which were passed upon in the following opinion delivered from the bench:

"There is presented for our determination the legality of the clerk's fees charged against relators for numerous motions, orders, and filings.   A number of these which were made for the respondents have been charged to the relators.   The fee of $1.25 for a motion and $1.25 for an

order have been charged for the admission of testimony and for the overruling of objections to the introduction of evidence.

[4] "Costs were not recoverable at common-law, and a party is liable for them only when their payment is required by express statutory provisions. (*McKenzie* v. *Coslett*, 28 Nev. 220; 11 Cyc. 24; *In re Green, Clerk*, 40 Mo. App. 491.) In *State, ex rel. Blount*, v. *Simmons*, 120 N. C. 19, 26 S. E. 649, the court said: 'The overcharges and abuses in making out bills of cost have become, and justly, a matter of public complaint. Yet there is this excuse, that, bills of costs having rarely been before the courts, clerks, no matter how conscientious, have had no authoritative construction to follow. Hence there has been very little uniformity; each clerk being, like the Gentiles of old, a law unto himself.'

[5] "As held in *Shed* v. *Railroad Co.*, 67 Mo. 687, statutes in reference to costs must be strictly construed, and an officer cannot legally claim fees unless the statute has expressly conferred the right to collect them. Section 474 of the practice act provides that 'there shall be allowed to the prevailing party in any action in the supreme and district courts, his costs and necessary disbursements, in the action or special proceeding in the nature of an action.' The following sections provide for the allowance of costs in judgments, and section 478 for their apportionment between the parties in the discretion of the court upon the rendition of judgment. The statute (Comp. Laws, 2469) allows the clerk of the supreme court, in addition to his other fees, $1.25 'for entering any motion, rule, or order,' and 30 cents 'for filing each paper.' Rule 27 of this court provides that 'no transcript or original record shall be filed or cause registered, docketed or entered until an advance fee of twenty-five dollars is paid into the clerk's office, to pay accruing costs of suit.' In compliance with this rule, $50 were paid to the clerk by relators. Section 491 of the civil practice act (Comp. Laws, 3586) was as follows: 'Every direction of a court or judge made or entered in

writing, and not included in a judgment, is denominated an order.  An application for an order is a motion.'  The following sections provide that motions shall be made in the county in which the action is brought, or in an adjoining county in the same district, and the time within which written notice of motion, when written notice is necessary, must be given and the manner in which it must be served.  In *State, ex rel. Blount, supra,* the court said: 'The charge—motion for judgment, 25 cents—is often made by clerks, but is illegal.  The motion for which 25 cents is allowable is a motion in the cause made in writing and required to be recorded, not the mere verbal application for a judgment.'

[6] "We conclude that the fee of $1.25 for entering every motion or order, which the clerk is authorized to charge under section 2469 of the Compiled Laws, is limited to orders and motions defined by section 491 of the practice act (Comp. Laws, 3586), and to directions of a court or judge required to be made or entered in writing, and to applications for the same.  We do not understand that every offer of, or objection to, evidence is a motion, nor that every ruling of the court admitting or rejecting answers or questions, testimony, or evidence is an order within the definition of motion and order for which the clerk is authorized to charge under the fee bill.  Nor do we think that the routine adjournment by the court of the trial or hearing, which may last several months, until the next day, or for a few days to accommodate pressing engagements of the court or counsel, is of the magnitude of a motion and order for continuance as generally understood, or warrants the charging of the fee for motion and order, except in cases where objection is made to the continuance and the court is required to rule upon the merits of the motion and objection; it being well understood when the proceeding commenced that such adjournments would be necessary because of the necessities of the court as well as counsel.  But there is no statute or authority providing for the charging to relators or appellants, or requiring the payment by them before judgment, of fees incurred by respondents.  Each party

to an appeal or proceeding is primarily liable for the costs made by them respectively.

[7] "Since the adoption of Rule 27, *supra*, it has been the practice of the . clerk to collect all costs of both parties out of the advance fee of $25 deposited by the appellant or relator. While this course is not strictly in accordance with the law, it in most cases results in a convenience to both parties as well as to the clerk of the court. In most cases this advance fee is sufficient to cover the costs of both parties, and no injury to either party can ordinarily result therefrom, for the prevailing party is entitled to recover his costs. In a case, however, where costs are incurred on both sides upon an appeal or original proceeding, the clerk should collect his costs in advance from the respective parties incurring such costs. If respondents, by making objections, bringing witnesses, and in other ways, could create costs at will and without limit, which relators would be compelled to pay in advance in order to maintain the proceedings they have instituted, this exaction would result in a denial to poor relators of the right to contest and cause great and undue expense for wealthy ones.

[8] "As it is the duty of the clerk to issue subpenas on request, the charge, 'Order to issue subpenas on request, $1.25,' will be disallowed unless the party against whom the charge is made applied for and obtained a written order that the subpenas issue on request. As courts are open for the introduction of testimony and the reception of evidence, and as it is their duty to proceed with trials at the time they are set, the following charges are disallowed: 'Order overruling respondents' objection to appointment of commissioner, $1.25. Motion and order to introduce testimony, $2.50. Motion and order to examine ballot boxes, $2.50. 24 orders overruling objections to examine ballot boxes, $30. Motion and order to introduce in evidence, $2.50. Order that counting the ballots be from 10 to 12, and 1:30 to 4, $1.25. Motion and order for Mr. Hamilton to be sworn, $2.50. Respondents' objections and ruling of court to proceed with cross-examination, $1.25. Motion and order

to open trunk containing packages, $2.50. Order that commissioner mark packages of unknown precincts as exhibits, $1.25. Motion and order to return all packages to trunk in charge of George L. Sanford, $2.50. Motion and order to examine each precinct package, $2.50.' Orders extending the time for filing demurrer, answer, and briefs are properly chargeable as motions and orders; and these, and items not heretofore mentioned as disallowed, will stand as charges against the party making the motion and obtaining the order, filing the paper or incurring the fee. Properly these orders would be in writing and filed or entered in the minutes of the court, and the prevailing parties would be entitled to recover judgment for their costs expended.

[9] "A request has been made that the ballots in each county to which objections are entered be attached together and filed as one exhibit and with a charge of one filing fee. As objections may be made to the admission of ballots in one precinct different from the objections made to ballots in another precinct in the same county, and as it is desirable to have the ballots of each precinct considered and kept separate so that they may be returned to the ballot box of that precinct without becoming intermingled with the ballots of other precincts, this request is not granted; but the relators may attach all ballots in the same precinct to which they object and have them filed as one exhibit, and the respondents may do the same."

Questions which arose regarding whether the ballots were public documents and whether they could be certified in by the clerks by express without being personally accompanied were passed upon and determined adversely to the contention of relators. (*State* v. *Baker*, 35 Nev. 1, *ante.*)

The further objection to ballots was first withdrawn by the contestants for the office of clerk of the supreme court, and on November 11, 1912, after the examination of about 18,000 ballots, the contest for the office of attorney-general was dismissed. The contest for the office of clerk of the supreme court was finally submitted,

with briefs, November 29, 1912, and we need consider further only the ballots relating to that contest.

Doubtful ballots were laid aside and carefully considered a second time by all the members of the court. Nearly all the questions involved regarding the validity of the ballots have been determined in the cases of *Dennis* v. *Caughlin*, 22 Nev. 452, 29 L. R. A. 731, 58 Am. St. Rep. 761; *Sweeney* v. *Hjul*, 23 Nev. 409; *State* v. *Sadler*, 25 Nev. 163, 83 Am. St. Rep. 573; *Lemaire* v. *Walsh*, 27 Nev. 258; *Strosnider* v. *Turner*, 29 Nev. 347, and *Strosnider* v. *Turner*, 30 Nev. 155, 133 Am. St. Rep. 710.

In accordance with these decisions and the pertinent sections of the statutes relating to elections, we have held as good ballots on which an apparent attempt to retrace a cross or an effort to make it more certain, and in doing so employing more lines than were necessary to properly make a cross, or on which there was a slightly blurred spot to correct a mistake, not indicating an intention to identify the ballot, or a slight erasure for the same purpose; or when the ballot paper was defective in manufacture; or when over a faint cross a second cross was placed, apparently for the purpose of making it more distinct; or when there was a slight blur connected with a cross, resulting from a defective stamp or too much ink on the pad; or when there was a slight pencil mark, or faint finger mark, or slight tobacco stain, clearly made by accident and not design, and ballots from which a strip had been torn along the edge by the election officers.

[10] As heretofore held, ballots were considered good on which more candidates were voted for than there were officers to be elected, but such ballots, when containing a cross after the names of both relator and respondent, could not be counted for either. Section 1858 of the Revised Laws provides that when a voter "marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office, his vote for such office shall not be counted."

[11] Objection was made to a considerable number of ballots because in voting for a constitutional amendment

the cross was placed after the word "Yes" or "No" and before the square. These ballots are held to be valid. For a time after the adoption of the Australian ballot system in this state, the statute provided that the candidate should be voted for by marking an X after his name, and it was held that the placing of the X after the name before the square did not invalidate the ballot. As amended in 1901 (Stats. 1901, c. 100), the statute (Rev. Laws, 1852) provides that the voter "shall prepare his ballot by stamping a cross or X in the square, and in no other place, after the name of the person for whom he intends to vote for each office." Since that time it has been necessary to place the X in the square after the name of the candidate in order to comply with the statute, and ballots with the cross after the name of the candidate, and before the square, which were formerly good, are now held to be invalid. (*Strosnider* v. *Turner*, 30 Nev. 155, 133 Am. St. Rep. 710.)

[12] The same section provides that "in case of a constitutional amendment, or other question submitted to the voters, the cross or X should be placed after the answer which he desires to give"; but the statute does not require that the cross in voting for or against a constitutional amendment be placed in a square, as is required in voting for a candidate. Consequently, under these two provisions of the statute, ballots with a cross before the square and after the name of a candidate are void, but when a cross before the square and after the word "Yes" or "No" in voting on a constitutional amendment are valid, as are also ballots in which a single cross voting on the constitutional amendment is placed in the square.

[13] Some of the ballots under objection had a cross placed in the square and another cross placed before the square and after the word "Yes" or "No" in voting on the constitutional amendment, thus:

| Yes | X | | X |
|-----|---|---|---|
| No  |   |   |   |

These ballots were rejected because they have the extra cross, while all ballots with only one cross after the word "Yes" or "No" following the constitutional amendment, whether the cross be before or in the square, are counted.

[14] Section 1858 provides that "any ballot upon which appears names, words or marks, written or printed except as in this act provided, shall not be counted." Many of the ballots which have been rejected were invalidated because stamped with a cross in the square, following a blank space left for filling in the name of a candidate for public administrator when the name of no person appeared upon the ballot as a candidate for that office, evidently because no nomination for the place was made, thus:

| For Public Administrator | Vote for One |
|---|---|
|  | X |

By the words "Vote for One," the voters using these ballots may have been misled into placing the stamp in the square following the vacant line, but the voter is required to know the law and that the statute is plain and inexorable in its language which invalidates the ballot if crosses or marks other than crosses in the square following the names of candidates, or crosses after the word "Yes" or "No" following a constitutional amendment, are placed on the ballot. On a few of such ballots the voter had written in with lead pencil the name of the person for whom he wished to vote for public administrator. The ballots are also rejected. This blank space could be used only for printing or inserting by the clerk on the ballot the name of some one nominated for the office after the ballot had been printed.

[15–17] Ballots having the following defects are also rejected: Crosses made with lead pencil or pen, or by marking with the wrong end of the stamp, as with a pen or brush; erasures not slight and destroying the texture of the paper; crosses on the back of the ballot, or on the front of the ballot excepting when in the squares opposite the names of the candidates, except when the vote

is on a constitutional amendment; any other marks, not slight or apparently accidental, which might have been designed for the identification of the ballot, or which might be readily used for that purpose; two or more crosses deliberately made within the square, not for the purpose of retracing; and ballots with holes rubbed or torn through the paper by the voter.

[18] The question of the validity of some of the ballots has not been easy to determine, but the number of these is not sufficient to change the result in any event. One ballot from which the number had not been torn by the election officers is held to be valid as not being caused by the fault of the voter, under former decisions of this court.

Under these precedents and rules, out of 963 ballots objected to by respondent we have sustained the objection to 264, and out of 755 ballots objected to by relator we have sustained the objection to 234. As relator Legate has consequently lost 30 ballots more than the respondent Josephs, this number, added to the 11 majority which Josephs had upon the face of the election returns, makes his majority 41.

The certificate of election as originally issued to Joe Josephs, respondent, will stand, and it is ordered and adjudged that he was elected to the office of clerk of the supreme court at the general election held in 1910, for the term of four years, and that he is entitled to the office accordingly.